

**CORPORATION SERVICE COMPANY®**

**SLM / ALL**
**Transmittal Number: 16345305**
**Date Processed: 03/09/2017**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Pamela Beyer<br>The Travelers Companies, Inc.<br>385 Washington Street,  9275-LC12L<br>Saint Paul, MN 55102 |

| | |
|---|---|
| **Entity:** | Travelers Casualty and Surety Company of America<br>Entity ID Number  2319288 |
| **Entity Served:** | Travelers Casualty and Surety Company of America |
| **Title of Action:** | Maritz Holdings, Inc vs. Travelers Casualty and Surety Company of America |
| **Document(s) Type:** | Petition |
| **Nature of Action:** | Contract |
| **Court/Agency:** | St. Louis County Circuit Court, Missouri |
| **Case/Reference No:** | I7SL-CC00823 |
| **Jurisdiction Served:** | Missouri |
| **Date Served on CSC:** | 03/08/2017 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | Travelers on 03/08/2017 |
| **How Served:** | Client Direct |
| Sender Information: | Matthew S. Darrough<br>314-552-6000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscglobal.com

**17SL-CC00823**

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

MARITZ HOLDINGS, INC.         )

       Plaintiff,          )

vs.                   )     Cause No.

                       )     Division No.

TRAVELERS CASUALTY AND     )
SURETY COMPANY OF AMERICA, )

                       )     **JURY TRIAL DEMANDED**

Serve At:                )

     Travelers Casualty and Surety )
     Company of America       )
     c/o Director of Insurance    )
     Missouri Department of Insurance )
     301 West High Street, Room 530 )
     Jefferson City, Missouri 65101 )

and                   )

FEDERAL INSURANCE COMPANY, )

Serve At:                )

     Federal Insurance Company   )
     c/o Director of Insurance    )
     Missouri Department of Insurance )
     301 West High Street, Room 530 )
     Jefferson City, Missouri 65101 )

     Defendants.          )

## PETITION

    Plaintiff Maritz Holdings, Inc. ("Maritz") states as follows for its Petition against

Defendants Travelers Casualty and Surety Company of America and Federal Insurance

Company:

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

## THE PARTIES

1.      Maritz is, and at all relevant times has been, a corporation organized and existing under the law of Missouri, and its principal place of business is located in Fenton, Missouri in St. Louis County, Missouri.

2.      Maritz, including through its subsidiary companies, is, and at all relevant times has been, in the business, *inter alia*, of providing market and customer research, incentive programs, learning solutions, event management serves, and travel management services to companies throughout the United States.

3.      On information and belief, Defendant Travelers Casualty and Surety Company of America is, and at all relevant times has been an insurance company organized and existing under the laws of the Commonwealth of Connecticut, and its principal place of business is located in the Commonwealth of Connecticut. Travelers Casualty and Surety Company of America is part of the Travelers family of insurance companies. Travelers Casualty and Surety Company of America is hereinafter referred to as "Travelers".

4.      On information and belief, Travelers is qualified to do business as an insurance company in the State of Missouri and elsewhere and does business and insures risks in Missouri and within St. Louis County, Missouri, including those involving Maritz that are the subject of this action.

5.      On information and belief, Defendant Federal Insurance Company is, and at all relevant times has been an insurance company organized and existing under the laws of the State of Indiana, and its principal place of business is located in the State of New Jersey. On information, Federal Insurance Company is a wholly-owned subsidiary

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

of The Chubb Corporation and a part of the Chubb family of insurance companies. Federal Insurance Company is hereinafter referred to as "Chubb". Travelers and Chubb are sometimes hereinafter referred to collectively as "Insurers".

6.      On information and belief, Chubb is qualified to do business as an insurance company in the State of Missouri and elsewhere and does business and insures risks in Missouri and within St. Louis County, Missouri, including those involving Maritz that are the subject of this action.

7.      This action arises out of and relates to the wrongful and vexatious refusal of the Insurers to provide insurance coverage under certain policies of insurance that Maritz purchased from the Insurers for a loss suffered by Maritz as a result of computer fraud that occurred in March 2016.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action because both Travelers and Federal are authorized to conduct business in Missouri, have transacted business in Missouri on a regular basis, have contracted to insure risks in the State of Missouri, including certain risks of Maritz that include the risk of loss that is the subject of this action, and the wrongs alleged herein caused damage in the State of Missouri.

9.      Venue is proper under RSMo. §508.010 because Maritz resides in this County and the Insurers are not residents in Missouri and because Maritz was first injured in St. Louis County by the wrongful acts of the Insurers.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

## GENERAL ALLEGATIONS

### THE POLICIES

10.     During the times relevant hereto, Maritz maintained certain insurance coverages with the Insurers.

11.     These insurance coverages included, among others, certain crime insurance coverages that Maritz purchased from Chubb and Travelers through payment of the premiums charged.

12.     With respect to the crime coverage in place in March 2016, Maritz maintained, among others, a primary policy of insurance with Chubb, a first layer excess policy with Travelers, and a second layer excess policy with Chubb.

**The Primary Policy**

13.     During the times relevant hereto, Maritz maintained an insurance policy numbered 8208-7853 (the "Primary Policy") with Chubb for the period of July 30, 2015 to July 30, 2016 omitting any policy extension.

14.     A true and accurate copy of the Primary Policy is attached hereto as **Exhibit 1** and incorporated by reference as if set forth fully herein.

15.     The Primary Policy is written using Chubb's Executive Protection Portfolio forms and contains, among other coverages, a Crime Coverage Section. Ex. 1.

16.     The Primary Policy contains Declarations specific to the Crime Coverage Section, identifying limits applicable to particular insuring clauses within the Crime Coverage purchased by Maritz, including a $5,000,000.00 limit for Computer Fraud Coverage (Insuring Clause 5) and $150,000.00 limit for Expense Coverage (Insuring Clause 10). Ex. 1, Crime Coverage Section Declarations.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

17.     The Computer Fraud Coverage Insuring Clause 5 of the Crime Coverage

Section in the Primary Policy states: "The Company shall pay the **Parent Organization**

for direct loss of **Money**, **Securities** or **Property** sustained by an **Organization** resulting

from **Computer Fraud** committed by a **Third Party**." Ex. 1, Crime Coverage Section,

Insuring Clause 5.

18.     The Expense Coverage Insuring Clause 10 of the Crime Coverage Section

in the Primary Policy states:

The Company shall pay the **Parent Organization** for:

(a) **Investigative Expenses** resulting from any loss covered under Insuring
Clauses 1 through 9 incurred by an **Organization**, but only if such
covered loss under Insuring Clauses 1 through 9 is in excess of the
Retention applicable to such covered loss;

(b) **Computer Violation Expenses** resulting from any loss covered under
Insuring Clause 1, 5 or 9 incurred by an **Organization**, but only if such
covered loss under Insuring Clause 1, 5 or 9 is in excess of the Retention
applicable to such covered loss.

No Retention shall apply to **Investigative Expenses** or **Computer
Violation Expenses** under Insuring Clause 10.

Ex. 1, Crime Coverage Section, Insuring Clause 10.

19.     The following definitions are included for purposes of the Crime Coverage

Section of the Primary Policy:

a.     "**Parent Organization**" means "the organization designated in
Item 1 of the Declaration of [the] General Terms and Conditions", which is Maritz. Ex. 1,
General Terms and Conditions Declaration and General Terms and Conditions.

b.     "**Organization**" means "any organization designated in Item 4 of
the Declarations for [the Crime Coverage Section]", which is Maritz and its Subsidiaries.
Ex. 1, Crime Coverage Section Definitions, Paragraph 11.

c.     "**Securities**" means "negotiable and non-negotiable instruments or
contracts representing either **Money** or **Property**." Ex. 1, Crime Coverage Section,
Definitions, Paragraph 11.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

     d.     "**Money**" means "currency, coin, bank notes and bullion." Ex. 1, Crime Coverage Section, Definitions, Paragraph 11.

     e.     "**Property**" means "tangible property other than **Money** or **Securities**." Ex. 1, Crime Coverage Section, Definitions, Paragraph 11.

     f.     "**Third Party**" means "a natural person other than: (a) an **Employee**; or (b) a natural person acting in collusion with an **Employee**." Ex. 1, Crime Coverage Section, Definitions, Paragraph 11.

     g.     "**Computer Fraud**" means "the unlawful taking or the fraudulently induced transfer of **Money**, **Securities**, or **Property** resulting from a **Computer System**." Ex. 1, Crime Coverage Section, Definitions, Paragraph 11.

     h.     "**Computer Violation**" means "the fraudulent: (a) entry of **Data** into or deletion of **Data** from a **Computer System**; (b) change to **Data** elements or program logic of a **Computer System**, which is kept in machine readable format; or (c) introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**" directed against an **Organization**. Ex. 1, Crime Coverage Section, Definitions, Paragraph 11.

     i.     "**Investigative Expenses**" means "reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization**, with the Company's prior written consent, to establish the existence and amount of a covered loss. **Investigative Expenses** shall not include expenses incurred by any **Client**." Ex. 1, Crime Coverage Section, Definitions, Paragraph 11.

     j.     "**Computer Violation Expenses**" means "reasonable expenses, other an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization** with the Company's prior written consent, to reproduce or duplicate damaged or destroyed **Data** or computer programs . . .." Ex. 1, Crime Coverage Section, Definitions, Paragraph 11.

     20.     Per Endorsement 28 to the Primary Policy, subparagraph (A) of Subsection 28 Valuation and Foreign Currency of the Crime Coverage Section is amended to state: "(a) the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**, or the cost of replacing such **Securities**, whichever is less, plus the cost to post a Lost Instrument Bond." Ex. 1, Endorsement 28.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

21.     Per Endorsement 21 to the Primary Policy, the retention for Insuring Clause 5 Computer Fraud Coverage is $100,000.00. Ex. 1, Endorsement 21.

**The First Layer Excess Policy**

22.     During the times relevant hereto, Maritz maintained an insurance policy numbered 10569750 (the "First Layer Excess Policy") with Travelers for the period of July 30, 2015 to July 30, 2016 omitting any policy extension.

23.     A true and accurate copy of the First Layer Policy is attached hereto as **Exhibit 2** and incorporated by reference as if set forth fully herein.

24.     The First Layer Excess Policy is written on the form of Travelers' Wrap + Excess Follow Form Crime Policy. Ex. 2.

25.     The Insuring Clause of the First Layer Excess Policy states:

In consideration of the payment of the premium, and in reliance upon the completeness and accuracy of the statements and disclosures made to the Underwriter and any issuer of Underlying Insurance by application, including all attachments, subject to the Declarations, Insuring Clause, Terms, Conditions and Limitations and Endorsements, if any, of this Policy, and except as provided either by endorsement or within Item 2. of the Declarations of this Policy, this Policy is subject to the same Insuring Clause(s), Terms, Conditions and Limitations and endorsements or riders, if any, as provided by the Policy(ies) identified in Item 6. of the Declarations. In no event shall this Policy provide broader coverage than would be provided by the most restrictive Underlying Insurance. This Policy is not subject to the same premium or the Limit of Liability of the Policy(ies) identified in Item 6. of the Declarations.

Ex. 2, First Layer Excess Policy, Insuring Clause.

26.     The Declarations for the First Layer Excess Policy identify the Limit of Liability of the First Layer Excess Policy as $5,000,000.00. Ex. 2, Declarations, Item 3. Item 2 of the Declarations sets forth the Policy Period as July 30, 2015 to July 30, 2016. Ex. 2, Declarations, Item 2.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

27.     The Declarations for the First Layer Excess Policy identify the Schedule of Underlying Insurance as the Primary Policy. Ex. 2, Declarations, Item 5. Item 6 of the Declarations states "[s]ubject to the Declarations, Insuring Clause, Terms, Conditions and Limitations and Endorsements, if any, of this Policy and as excepted below, this Policy follows the form of: [the Primary Policy]." Ex. 2, Declarations, Item 6. Item 6 identifies "none" under exceptions. Ex. 2, Declarations, Item 6.

28.     By Endorsement to the First Layer Excess Policy, the definition of "Securities" in Paragraph 11 of the Primary Policy is replaced with: "Securities means Gift Certificates or Gift Cards distributed by the Insured." Ex. 2, Securities Endorsement.

**The Second Layer Excess Policy**

29.      During the times relevant hereto, Maritz maintained an insurance policy numbered 6803-1913 (the "Second Layer Excess Policy") with Chubb for the period of July 30, 2015 to July 30, 2016 omitting any policy extension.

30.     A true and accurate copy of the Second Layer Excess Policy is attached hereto as **Exhibit 3** and incorporated by reference as if set forth fully herein.

31.     The Second Layer Excess Policy is written on the form of a Chubb Excess Policy. Ex. 3.

32.     The Insuring Clause of the Second Layer Excess Policy states:

> The Company shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** as amended by any more restrictive terms and conditions of any other policy designated in Item 4(B) of the Declarations, except as otherwise provided herein.

Ex. 3, Second Layer Excess Policy, Insuring Clause.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

33.     The Declarations for the Second Layer Excess Policy identify the Limit of Liability of the Second Layer Excess Policy as $10,000,000.00. Ex. 3, Declarations, Item 3.

34.     The Declarations for the Second Layer Excess Policy identify the Underlying Insurance as the Primary Policy and the First Layer Excess Policy. Ex. 3, Declarations, Item 4.

MARITZ'S LOSS

**The EGift Cards**

35.     As part of incentive programs or related services provided to its customers, Maritz manages and handles rewards programs for its customers.

36.     As part of these rewards programs, participants in the programs are awarded or rewarded with gift cards/certificates that can be redeemed with designated vendors. By way of example, gift cards/certificates are purchased through vendors like Target, Amazon, Apple (iTunes), and other vendors.

37.     Once selected and received by a participant, a gift card/certificate can then be redeemed by the participant with the issuing vendor through the use of a redemption code. Upon redemption, the participant is provided with a credit for the face amount of the gift card/certificate at the issuing vendor.

38.     The redemption codes are typically conveyed to the participant on a piece of plastic (similar in size to a credit card) or in an electronic format. For ease of reference, electronically conveyed gifts are referred to herein as "eGift Cards".

39.     Maritz maintains eGift Cards that Maritz purchases for use by customers and participants in its customers' rewards programs. In some instances, purchases are

9

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

prefunded by Maritz's customers or charged back to Maritz's customers, with Maritz maintaining and holding the eGift Cards for use in a particular customer's rewards program.

40.     Maritz maintained at relevant times eGift Cards both before and after they had been issued to participants in the programs. In each instance, the eGift Card consists of the redemption code relating to an assigned face value (i.e., denomination) with a particular issuing vendor.

41.     During times relevant herein, Maritz maintained these eGift Cards in files on a shared network (the L-Drive) found on Maritz's computer systems. That computer system existed at Maritz's headquarters, 1375 North Highway Drive, Fenton, Missouri 63099 at times relevant to this action.

42.     Among others, Maritz held eGift Cards on its L-Drive during times relevant to this action for use by participants in programs for two of its customers that Maritz operated – Barclays US and Citi (the "involved programs").

**CashStar**

43.     Since February 2015, Maritz has used a third-party, CashStar, Inc. ("CashStar") to deliver eGift Cards issued under the involved programs to participants. EGift Cards were loaded into the CashStar environment and delivered by CashStar to participants in programs operated by Maritz.

44.     On or about January 20, 2016, CashStar informed Maritz that CashStar had experienced a security incident from November 29, 2015 through December 8, 2015, wherein an unauthorized person accessed CashStar's platform using third-party

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

credentials and was able to view six Maritz eGift Cards only. CashStar advised Maritz that subsequent monitoring reflected no unusual activity with respect to such cards.

**The Computer Fraud**

45.    One of Maritz's customers, Barclays US, was running a campaign involving 40,000 of its cardholders, which involved eGift Cards with various vendors purchased by Maritz and held by Maritz during the relevant time periods.

46.    On or about March 10, 2016, the account teams for Maritz and Barclays reported that a large number of participants in the involved programs had received eGift Cards with no value, including Amazon, iTunes, and Target eGift Cards.

47.    Maritz promptly retained a data security consulting firm, Charles River Associates ("CRA"), and other third-parties to investigate.

48.    As a result of the investigation, Maritz discovered the following:

a.    On March 1, 2016, an unidentified perpetrator directed so-called "phishing emails" to 63 Maritz email addresses (63 Maritz employees and one generic email address). Each of these 63 email addresses also was used as an application logon ID on the CashStar platform.

b.    The phishing emails contained a malicious file in an attached Microsoft Word document.

c.    The malicious file provided a backdoor to each such computer and the systems that such computer could access within Maritz's computer system.

d.    Sixteen computers in the Maritz environment loaded the malicious Microsoft Word document, which downloaded a backdoor. Twelve computers communicated with the command and control server associated with the backdoor.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

e.      In addition, 87 Maritz employees received similar phishing emails on March 14, 2016. These emails operated similarly to those received March 1, 2016. Twenty-three of these computers in the Maritz environment loaded the malicious Microsoft Word documents, which downloaded the backdoor. Five of these computers communicated with the command and control server associated with the backdoor.

f.      In addition, 91 Maritz employees received similar emails on March 15, 2016, although there is no evidence of computers infected through the March 15, 2016 emails.

g.      In total, 17 computers were infected with the backdoor in March 2016, two of which had credential harvesting malware installed. One infected computer had additional malware inserted on it to harvest active directory credentials.

h.      The perpetrator(s) were in Maritz's computer systems between March 2, 2016 and March 26, 2016, at which time the perpetrator(s) accessed Maritz's L-Drive where Maritz held the eGift Cards at the relevant times.

i.      The perpetrator(s) transferred 1.2 gigabytes of data from the Maritz server.

49.      After temporarily ceasing its operations relating to eGift Cards on March 11, 2016, Maritz began contacting vendors for eGift Cards, providing related eGift Card inventory that had yet to issue to participants, requesting that the vendors identify redeemed eGift Cards and devalue any unredeemed eGift Cards to prevent future unauthorized redemptions.

50.      Of the 28 vendors involved, Maritz identified loss through unauthorized redemption of eGift Cards with iTunes (Apple), Target, Nike, Gap, Home Depot, Barnes

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

and Noble, and Bed Bath & Beyond. One vendor (Amazon) refused to provide redemption information.

51.     The cooperating vendors confirmed the redemption of unissued eGift Cards with total value of $11,159,676.00. These eGift Cards had not been directed to participants for redemption purposes at the time of the computer fraud upon Maritz.

52.     Maritz cancelled all undirected eGift Cards on the system that had not been redeemed, for purposes of replacement. Maritz has not claimed covered loss with respect to these cancelled eGift Cards because it suffered no loss of their value.

**Maritz's Loss**

53.     Maritz suffered loss with respect to the non-directed and improperly redeemed eGift Cards. Maritz reported this loss to the Insurers as $11,159,676.00 based on the face value of these cards, reflective of their value. Maritz subsequently reduced this number to $11,094,077.39 based on subsequent discoveries that required correction.

54.     In addition, Maritz was required to reissue certain gifts involving two vendors, Amazon and iTunes, that had previously been directed to participants in Barclays' reward program, because of the volume of complaints received from participants that were provided eGift Cards with no value. Maritz paid $342,000.00 to purchase the replacement cards, comprised of $320,000.00 in replacement for Amazon eGift Cards (32,000 for $10 each) and $22,000.00 in replacement cards for iTunes eGift Cards (2,200 for $10 each).

55.     Separate and apart from the reissued cards identified in the above-paragraph, Maritz received complaints from a number of participants in rewards

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

programs concerning previously issued eGift Cards containing no value or incorrect value. Maritz reissued eGift Cards based on these complaints, totaling $107,120.00.

56.    In connection with its investigation, Maritz incurred out-of-pocket expenses totaling sums greatly in excess of $150,000.

**The Insurers' Handling of the Claims**

57.    Maritz promptly notified the Insurers of its loss, making timely claims under the Primary Policy, First Layer Excess Policy, and Second Layer Excess Policy (collectively, the "Policies").

58.    Maritz submitted its proofs of loss, comprised of sworn statement of loss, sworn affidavit, and related documentary evidence, to both Insurers on June 16, 2016.

59.    The Insurers did not promptly respond concerning Maritz's claim for coverage after submission of the proof materials by either accepting or denying Maritz's claim.

60.    The Insurers did not keep Maritz updated on the nature or status of their investigation or advise Maritz as to reasons for the Insurers' delay in providing Maritz with coverage determinations.

61.    At some time unknown to Maritz, Chubb retained a third-party, Kroll, to conduct a forensic investigation and accounting concerning Maritz's claims and proof materials. On information and belief, Travelers also retained Kroll for its purposes and Chubb, Travelers, and Kroll worked together, sharing information throughout Kroll's investigation.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

62.     On or about August 18, 2016, approximately two months after Maritz submitted its proofs, Maritz received indication that Kroll had completed its "initial review" and requesting follow-up calls for purposes of securing additional information.

63.     Due to scheduling conflicts, that call could not be held until September 20, 2016. During the call, Maritz supplied the information requested. Kroll indicated that it would be seeking additional documents and proceeded to do so.

64.     Having expressed its frustration to the Insurers with the pace of the coverage investigation, Maritz went to great effort to provide the follow-up information and documentation reasonably requested by Kroll in a prompt and complete manner to secure the bargained for coverage.

65.     Kroll continued to request documents and information, which Maritz attempted to supply despite their apparent immateriality to the submitted and pending claims.

66.     Maritz continued to express its frustration and dissatisfaction with the lack of the Insurers' coverage decision and the slow pace of its investigation.

67.     The Insurers failed to keep Maritz apprised through written notification concerning the reasons for delay in their coverage decisions.

68.     On December 28, 2016, more than six months after submission of Maritz's proof, Chubb issued a coverage letter. Chubb's December 28, 2016 letter confirmed that the March 2016 phishing email campaigns containing malicious code delivered to individuals at Maritz were the means for an intrusion into Maritz's internal network infrastructure, which constituted a fraudulent entry of "Data" into Maritz's "Computer System", satisfying the definition of "Computer Violation" and triggering

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

coverage under Computer Fraud Insuring Clause 5 of the Primary Policy involving the taking of "Securities".

69.     Chubb's December 28, 2016 letter took issue with the quantum of Maritz's loss, stating that Chubb relied on Kroll's analysis to determine Maritz suffered covered loss in the amount of only $5,734,780.21, comprised of $5,584,789.21 in the loss of non-directed and improperly redeemed eGift Cards and $150,000 in Investigative Expenses or Computer Violation Expenses due to the limit application.  Applying the retention and the limits of the Primary Policy, Chubb indicated its willingness to pay $5,000,000.00 to Maritz.

70.     Chubb denied coverage with respect to Maritz's costs associated with replacing and reissuing cards. Chubb disputed the proper quantification of Maritz's out-of-pocket costs as Investigative Expenses or Computer Violation Expenses, but found the limit for Insuring Clause 10 provided only $150,000 total for out-of-pocket costs.

71.     Chubb took the position in its December 28, 2016 letter that Maritz loss relating to unissued and improperly redeemed eGift Cards was $5,584,789.21 and not $11,094,077.79 as Chubb: (a) reduced the value of the non-directed eGift Cards by $1,860,400.57 to reflect its assessment of discounts and rebates provided by vendors at the time of Maritz's original purchase of the eGift Cards; and (b) determined that the loss of $4,549,802.55 (face value)/$3,648,887.61 (applying Chubb's purchase price discounts) of the non-directed eGift Cards remained unverified as Maritz had provided circumstantial evidence, but not "definitive proof", for Chubb to conclude that a perpetrator had taken these eGift Cards from Maritz and not from CashStar.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

72.     On January 4, 2017, more than six months after submission of Maritz's proof, Travelers issued its coverage determination. Travelers' January 4, 2017 letter states that Travelers adopts Chubb's determinations, such that Travelers would issue Maritz a check in the amount of $634,789.21 after Chubb paid the limit of the Primary Policy.

73.     On January 5, 2017, Maritz directed a letter to the Insurers that requested reconsideration, challenged the quantum of loss assessment provided by the Insurers, disputed the application of discounts applied by the Insurers, took issue with coverage denials relating to elements of the claim, and explained the proper verification of Maritz's full claimed loss through the submissions. Maritz also requested a copy of the Kroll report relied on and identified by the Insurers as the basis for their determinations in view of the fact that the figures and letters provided by the Insurers lacked detail or explanation as to the nature of the calculations.

74.     Maritz held a check from Chubb for the Primary Policy limit until it could work through an appropriate release with Chubb with respect to the Primary Policy. On January 10, 2017, Maritz executed an agreed release, releasing Chubb only with respect to the undisputed limit under the Primary Policy, which Chubb paid and Maritz deposited. Maritz reserved all claims against Chubb relating to the Second Layer Excess Policy.

75.     On January 18, 2017, Maritz executed a partial release in favor of Travelers, releasing Travelers with respect to payment of the undisputed $634,789.21. Maritz reserved all claims against Travelers concerning disputed additional amounts

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

under the First Layer Excess Policy. Travelers subsequently paid Maritz $634,789.21, which Maritz has deposited.

76.     Despite Maritz's January 5, 2017 letter, neither Insurer has, to date, responded to Maritz's reconsideration request, but they did provide Maritz with a copy of the Kroll report on February 17, 2017.

## COUNT I
## (BREACH OF CONTRACT)

77.     Maritz realleges and incorporates by reference paragraphs 1 through 76 as if set forth fully herein.

78.     Maritz purchased the insurance coverage provided by the First Layer Excess Policy for valuable consideration, by means of premiums paid to Travelers.

79.     Maritz purchased the insurance coverage provided by the Second Layer Excess Policy for valuable consideration, by means of premiums paid to Chubb.

80.     The First Layer Excess Policy is a contract of insurance that is valid and enforceable against Travelers.

81.     The Second Layer Excess Policy is a contract of insurance that is valid and enforceable against Chubb.

82.     Pursuant to the First Layer Excess Policy, Travelers was required to pay Maritz $4,365,210.79 in addition to the amount that is has paid to date, which sum reflects the difference between the limit of the First Layer Excess Policy and the undisputed sum that Travelers paid Maritz under the First Layer Excess Policy.

56.     Pursuant to the Second Layer Excess Policy, Chubb was required to pay Maritz $1,593,197.39, which sum reflects Maritz loss valued at face with respect to all unissued eGift Cards improperly redeemed, the reissued card cost, the replaced card

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

costs, and $150,000 in out-of-pocket costs minus the $100,000 retention in the Primary Policy, the $5,000,000 limit of the Primary Policy, and the $5,000,000 limit of the First Layer Excess Policy.

83.     Despite demand by Maritz, the Insurers failed and refused, and continue to fail and refuse, to honor their contractual obligations concerning coverage under the First and Second Layer Excess Policies, all in contravention of the terms and conditions of those policies.

84.     As a result of Travelers' breach of its contractual obligations under the First Layer Excess Policy, Maritz has been damaged in the sum of at least $4,365,210.79, plus foreseeable consequential damages, pre-judgment interest, and attorneys' fees and costs incurred to secure the benefit of these policy proceeds, including those incurred in this action, all to be proven at the time of trial

85.     As a result of Chubb's breach of its contractual obligations under the Second Layer Excess Policy, Maritz has been damaged in the sum of at least $1,593,197.39, plus foreseeable consequential damages, pre-judgment interest, and attorneys' fees and costs incurred to secure the benefit of these policy proceeds, including those incurred in this action, all to be proven at the time of trial.

WHEREFORE, Maritz respectfully requests that this Honorable Court enter judgment as follows:

(a) in Maritz's favor and against Travelers in the amount of at least $4,365,210.79, plus consequential damages, pre and post-judgment interest, attorneys' fees and costs incurred; and

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

(b) in Maritz's favor and against Chubb in the amount of at least $1,593,197.39, plus consequential damages, pre and post-judgment interest, attorneys' fees and costs; and

(c) for such additional and further relief as this Court deems just and proper.

## COUNT II
### (VEXATIOUS REFUSAL TO PAY)

86.     Maritz realleges and incorporates by reference paragraphs 1 through 85 as if set forth fully herein.

87.     The First and Second Layer Excess Policies were contracts designed to satisfy Maritz's loss relating the theft of eGift Cards by Computer Fraud.

88.     Maritz submitted its proofs to the Insurers with respect to loss covered under the Primary Policy, the First Layer Excess Policy, and the Second Layer Excess Policy on June 16, 2016.

89.     The Insurers failed to conduct a prompt investigation of the claims or render prompt coverage decisions to Maritz, contrary to standards of care and state regulations imposed upon insurance companies.

90.     The Insurers failed to keep Maritz apprised of the reason(s) for delays in their coverage decision, contrary to standards of care and state regulations imposed upon insurance companies.

91.     At the time of Chubb's December 28, 2016 letter and Travelers' January 4, 2017 letter, the Insurers failed to provide Maritz with a copy of the Kroll report that served as the basis for their determinations and otherwise failed to explain to Maritz the calculations or support for the sums identified in Chubb's December 28, 2016 and Travelers' January 4, 2017 letters through application of purchase discounts or location in

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

the CashStar environment, contrary to standards of care and state regulations imposed upon insurance companies, although the Insurers supplied the Kroll report in February 2017.

92.     The Insurers' application of purchase price discounts and rebates to ascertain the value of stolen eGift Cards is contrary to the express terms of the Policies and the law. In applying such deductions, the Insurers knowingly misapplied their own policy language and misrepresented the required valuation approach to Maritz.

93.     The Insurers' refusal to recognize $4,549,802.55 as covered and verified loss relating to eGift Cards that had not issued when they were improperly redeemed is contrary to the proofs and information provided the Insurers. The Insurers are fully aware from the submissions that all of the evidence supports coverage for this sum. The Insurers' position that such loss could have possibly come from other sources, without any evidence of such and with all evidence reflecting a loss through Maritz's system, is knowingly in error and contrary to Maritz's rights under the Policies and the law.

94.     The Insurers' actions and inactions culminating in their refusal to pay additional sums due and owing under the First and Second Layer Excess Policies is vexatious and without reasonable cause or excuse.

62.     The Insurers have deprived Maritz of benefits purchased under the First and Second Layer Excess Policies, initially through their untimely investigation and subsequently by refusing to acknowledge the insurance proceeds that they knew to be due and owing Maritz under the Policies.

63.     Maritz is therefore entitled to recover penalties plus reasonable attorneys' fees pursuant to RSMo. Section 375.420, which permits the recovery of the amounts due

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

under policies of theft insurance, interest, additional damages of 20% of the first $1,500.00 of loss and 10% of the amount of loss in excess of $1,500, and reasonable attorneys' fees.

WHEREFORE, Maritz respectfully requests that this Honorable Court enter judgment in its favor and against Travelers in the amount of the unpaid loss plus the statutory penalty of $436,671.00 and Chubb in the amount of the unpaid loss plus the statutory penalty of $159,470.00, plus consequential damages, pre and post-judgment interest, attorneys' fees and costs incurred herein, and such additional and further relief as this Court deems just and proper.

## COUNT III
### (DECLARATORY JUDGMENT)

95.     Maritz realleges and incorporates by reference paragraphs 1 through 94 as if set forth fully herein.

96.     A controversy presently exists between Maritz and Travelers concerning Travelers' obligation to pay Maritz policy proceeds under the First Layer Excess Policy.

97.     A controversy presently exists between Maritz and Chubb concerning Chubb's obligation to pay Maritz policy proceeds under the Second Layer Excess Policy.

78.     Maritz has a legally protectable interest in that its pecuniary interests are at issue as a result of Insurers' interpretation of the First and Second Layer Policies, which follow the form of the Primary Policy.

79.     The controversy between Maritz and the Insurers is ripe for this Court's issuance of a declaratory judgment because the facts necessary to adjudicate this count currently exist, and the Court's interpretation of the Policy will result in immediate consequences for both Maritz and the Insurers.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

80.     Maritz therefore seeks a declaration from this Court stating that the appropriate valuation under the Policies with respect to the unissued eGift Cards that were improperly redeemed is their market value the day preceding the intrusion into Maritz's system, that value is the face value of the eGift Cards, and that a lesser valuation is only appropriate if Maritz elects replacement, which requires the value set at the cost associated with replacing those eGift Cards when the Insurers pay or agree to pay the full policy benefits due and owing under the First and Second Layer Excess Policies.

WHEREFORE, Maritz respectfully requests that this Honorable Court enter judgment in its favor and against Insurers and declare that the appropriate valuation under the Policies with respect to the unissued eGift Cards that were improperly redeemed is the face value of such cards reflecting their market value the day preceding the intrusion into Maritz's system unless Maritz replaces the eGift Cards, requiring valuation at the costs associated with replacing those eGift Cards when the Insurers pay over or agree to pay the full policy benefits due and owing under the First and Second Layer Excess Policies. Maritz prays for such additional relief as the Court deems just and proper.

**JURY DEMAND**

Maritz demands trial by jury on all issues triable to a jury.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

Respectfully submitted,

Thompson Coburn LLP


/s/ *Matthew S. Darrough*
Matthew S. Darrough, #46307
Brandi L. Burke, #66579
One US Bank Plaza
St. Louis, Missouri  63101
314-552-6000
FAX 314-552-7000
mdarrough@thompsoncoburn.com
bburke@thompsoncoburn.com

*Attorneys for Plaintiff Maritz Holdings, Inc.*



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>DAVID L VINCENT III | Case Number:  17SL-CC00823 |
| Plaintiff/Petitioner:<br> MARITZ HOLDINGS, INC.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>MATTHEW SCOTT DARROUGH<br>ONE US BANK PLAZA<br>ST LOUIS, MO  63101 |
| Defendant/Respondent:<br> TRAVELERS CASUALTY AND SURETY<br>COMPANY OF AMERICA | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:   TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

**MO DEPARTMENT OF INSURANCE**
**301 WEST HIGH STREET, ROOM 530**
**JEFFERSON CITY, MO 65101**

*COURT SEAL OF*



*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

<u>06-MAR-2017</u>
Date

_____ Clerk

Further Information:
LNG

---

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
 _____ (name) _____ (title).
☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____        _____
                                    Date                                    Notary Public

---

| | |
|---|---|
| **Sheriff's Fees, if applicable** | |
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case.  However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.   Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.   Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.   An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only:* **Document ID# 17-SMCC-1701**     2     (Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only*: **Document ID# 17-SMCC-1701**    3    (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

17SL-CC00823

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# EXHIBIT 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**Executive Protection Portfolio**

PREMIUM BILL

Insured:   Maritz Holdings Inc.                                          Date:   07/29/2015

Producer:   ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES,
INC.
12444 POWERSCOURT DRIVE
SAINT LOUIS, MO 63131-9998

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Product:      Executive Protection Portfolio

Policy Number:     8208-7853

Policy Period:  July 30, 2015 to July 30, 2016

NOTE: - PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL
WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE.

| Product | Effective Date | Premium |
|---|---|---|
| CRIME | 07/30/15 | $65,636.00 |
| SPECIAL COVERAGE | 07/30/15 | $8,292.00 |
|  |  |  |
|  |  |  |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $73,928.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $73,928.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

Form 14-02-1324i (Rev. 1/99)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

## POLICYHOLDER
## DISCLOSURE NOTICE OF
## TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company: Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 03/2015)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

July 29, 2015

Maritz Holdings Inc.
1375 North Highway Drive
Fenton, MO 63099

## Important Information: Please read!

Insuring Company: Federal Insurance Company

Thank you for purchasing your Kidnap/Ransom and Extortion coverage from Chubb. As a leading provider of this specialized coverage, Chubb has the safety of your employees and corporate assets as our top priority. To accomplish this goal, we can provide you with the following tools:

**RISKNET™**
Your Chubb Kidnap/Ransom and Extortion coverage provides you with access to The Ackerman Group's widely followed RISKNET database. RISKNET is an Internet-based service that analyzes terrorism, criminal, and political stability risks around the world.

To register for RISKNET, please complete the on-line RISKNET registration form at **http://csi.chubb.com/products/k-r/**.

*For more information about RISKNET, see page 2 of this packet.*

**IN THE EVENT OF A KIDNAPPING**
As a client of Chubb, you are guaranteed immediate response from The Ackerman Group Inc. In the event of a kidnapping, you may **immediately** contact The Ackerman Group (**305.865.0072**, day or night) and identify your corporation as a Chubb insured.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

*For more information on how to respond to a kidnapping, see page 3 of this packet.*

**RISK MANAGEMENT GUIDES**
For your free copy of *Managing Travel Risks*, a useful guide for international travelers, and *Managing Terrorism Risks*, a guide to controlling international travel risks for our insureds, please contact your agent or broker.

*For more information about our risk management guides, see page 5 of this packet.*

Form 14-02-2180- (Ed. 08/02)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# RISKNET™

Terrorism is a fact of life, and corporate leaders must deal with its risks when transacting business around the world. Well-managed companies can take steps to help protect their investments and employees from kidnapping and other acts of terrorism by having a crisis management strategy in place.

**Prevent a crisis...Learn how to help protect your company from terrorism**

While no one can predict when or where a kidnapper or an extortionist might strike, there are steps you can take to help protect your company and your employees in the event of such a threat.

Risk management is the foundation to safeguarding your employees and corporate assets.

## RISKNET™

Your Chubb Kidnap/Ransom and Extortion coverage also provides you with access to The Ackerman Group's widely followed RISKNET database. RISKNET is an Internet-based service that analyzes terrorism, criminal, and political stability risks around the world. Updated every business day and accessible anytime from anywhere in the world, RISKNET compliments your Kidnap/Ransom and Extortion coverage with features that include:

*The Executive Digest:* A news bulletin of breaking developments that could affect your travel and overseas operations. It is published at 9 a.m. eastern time and updated during the business day during periods of emergency.

*Country Summaries*: Summaries of current terrorism, crime and politically unstable environments in 90 countries designed for both decision-makers and travelers.

*The Airline Guide:* Contains a listing of major worldwide airlines rating each on terrorism, hijacking, and bombing risk factors. Included is a synopsis of current concerns. This listing is updated a minimum of every three months.

*The City Guide:* Offers recommendations on the best means of traveling from the airport to town, the most appropriate ways of getting around (by foot and/or vehicle), and the safest hotels in more than 125 cities worldwide. It also addresses special security concerns.

We encourage you to use this valuable risk management tool when making international travel plans and important international business decisions.

## How to Register for RISKNET

To register for RISKNET, please complete the on-line RISKNET registration form at **http://csi.chubb.com/products/k-r/**. This will automatically register your organization for access. You will receive your username and password from The Ackerman Group within 3 business days. If you encounter difficulties with the on-line form, please contact the RISKNET administrator of The Ackerman Group directly at 305.865.0072 to register for RISKNET.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

Please note that RISKNET information is copyrighted and intended solely for the use of subscribers and their employees. Data may not be made available to clients, subcontractors, distributors, or any other third parties without the express written consent of The Ackerman Group. If you have any questions regarding RISKNET, please contact the RISKNET administrator at 305.865.0072.

## IN THE EVENT OF A KIDNAPPING

Chubb is pleased to provide this information in cooperation with The Ackerman Group, one of the world's preeminent security consulting firms in the field of corporate-related terrorism. Since 1978, The Ackerman Group has made itself immediately available, 24 hours a day, to Chubb customers who have kidnap/ransom & extortion insurance coverage. If you have questions regarding The Ackerman Group's services, you may contact them directly at 305.865.0072.

**Before a crisis...**

Perhaps the most important step your company can take to react effectively to a kidnapping is to plan ahead, appoint the right people to a crisis management team, and make certain field and home office staff know how to contact a team member.

**Plan ahead by making these preparations**

1)    Establish a corporate crisis management team made up of three core people:

    a)    The ultimate decision maker, normally the CEO.

    b)    The coordinator, often the corporate security director, risk manager, or chief of international operations.

    c)    The general counsel.

The team might also include a finance officer (to raise the ransom), a personnel specialist (to oversee the care of the hostage's family), and a public relations specialist (to handle press inquiries).  Since the first hours following a kidnapping are critical to successful resolution, early decisions should be made by key corporate decision makers in consultation with The Ackerman Group, not by a field manager or staff.

2) Create a communications infrastructure so field managers know who is on the crisis management team and how to notify them the moment an emergency occurs. Stress that immediate notification of the crisis management team, even before notifying local law enforcement authorities, is necessary to ensure effective handling of the situation consistent with procedures established for these emergency situations.

**The Initial Response to a Kidnapping**

**When a threat occurs...**

In general, neither the field manager nor the crisis management team should try to thwart the attempt alone, but should swiftly do the following.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**The field manager should:**

1) Contact a crisis management team member (usually the coordinator) immediately upon learning of, or suspecting, a kidnapping.

2) Give all the known details about the circumstances of the abduction, the medical condition of the hostage, and the content of any communications from the kidnappers.

**The crisis management team should:**

1) Ask the field manager (or other caller) for the specifics about the abduction circumstances, hostage's medical condition, content of kidnappers' communications, and other useful information.

2) Instruct the field manager (or other senior representative) not to talk to the press and not to report the incident to local law-enforcement authorities until the crisis management team gives the go-ahead. (This assumes local authorities have not already been notified.)

3) Direct the field manager to prepare appropriate staff members to expect written or telephone communications from the kidnappers and to record phone calls if possible. Call recipients should merely listen to the demands and ask the kidnappers to call back. They should not attempt to negotiate.

4) Tell the field manager to stand by for further instructions from the crisis management team. Emphasize no one should attempt to handle this emergency alone.

5) Convene a meeting of the crisis management team and immediately contact The Ackerman Group (305.865.0072, day or night). When calling, identify the corporation as a Chubb insured. The Ackerman representative will normally participate in the initial team meeting by speakerphone, and then spearhead the recovery effort. However, all significant decisions will be referred to the crisis management team.

**The Ackerman Group, Inc.**

As a customer of Chubb, you are guaranteed immediate response from The Ackerman Group Inc., an independent international security consulting firm retained to assist your organization in a time of crisis. The Ackerman Group can handle all aspects of a hostage recovery, including negotiations, liaison with law enforcement agencies, conversion and protection of ransom funds, and even delivery of ransom funds.

Mike Ackerman, Managing Director, is widely acknowledged as one of America's leading authorities on terrorism, Mike Ackerman's forte is recovering kidnap victims. He has lectured at the National War College, the Harvard Business School and Dartmouth's Amos Tuck School of Business Administration, and appeared before the crisis-management teams of numerous multinational corporations. Ackerman served in the CIA's Clandestine Services for 11 years before resigning in 1975. In the CIA he had undertaken intelligence operations in some 20 European, Latin American and African countries. Fluent in Spanish and conversant in Russian and Italian, Ackerman graduated from Dartmouth College magna cum laude and holds an M.A. from Columbia. He was a security officer in the Strategic Air Command.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

Clients can also contact The Ackerman Group for consultation on security procedures and crisis management prior to an extortion threat.

## RISK MANAGEMENT GUIDES

**More Information**

If you would like more information about your kidnap/ransom & extortion insurance coverage from Chubb or you would like a free copy of *Managing Travel Risks*, a useful guide for international travelers, and *Managing Terrorism Risks*, a guide to controlling international travel risks for our insureds, we encourage you to talk to your agent or broker.

This document is for information only. It is offered as a resource to be used together with your professional insurance advisers in maintaining a loss prevention program. No liability is assumed by reason of the information this document contains.

For promotional purposes, Chubb refers to member insurers of the Chubb Group of Insurance Companies underwriting coverage.

The precise coverage afforded is subject to the terms, conditions and exclusions of the policies as issued. Not all insurers do business in all jurisdictions.

Chubb Group of Insurance Companies
82 Hopmeadow Street
Simsbury, CT 06070-7683

http://csi.chubb.com

Form 14-02-2180-(Ed. 08/02)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

## Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as described in this Notice.

### Employment Practices Liability (EPL) Loss Prevention Services

- *Employment Practices Loss Prevention Guidelines* Manual
  Written by Seyfarth Shaw exclusively for Chubb, this manual provides an overview of key employment issues and offers proactive ideas for avoiding employment lawsuits. To order the *Employment Practices Loss Prevention Guidelines,* simply call **1.866.282.9001,** order 14-01-0061, and provide your mailing address.

Additional employment practices loss prevention services are available to customers who purchase employment practices liability insurance from Chubb. For more information, simply consult http://csi.chubb.com/epllossprevention or email csi-info@chubb.com.

### Directors and Officers (D&O) Liability Loss Prevention Services

- *Directors and Officers Liability Loss Prevention* Manual
  Written by Dan A. Bailey exclusively for Chubb, *Directors and Officers Liability Loss Prevention* discusses general principles governing D&O liability and potential exposures for directors and officers. Mr. Bailey has also written *Directors and Officers Securities Litigation Loss Prevention* to address the exposures of publicly traded companies.  To order *Directors and Officers Liability Loss Prevention (form # 14-01-0035)* or *Directors and Officers Securities Litigation Loss Prevention (form # 14-01-0448),* simply call **1.866.282.9001,** order the form(s) you need, and provide your mailing address.

- *Loss Prevention Guidelines for Independent Directors*
  Written exclusively for Chubb by Dan A. Bailey, this manual discusses roles played by independent directors, the increasing importance of independent directors, and corporate governance best practices.  To order *Loss Prevention Guidelines for Independent Directors*, simply call **1.866.282.9001,** order 14-01-0679, and provide your mailing address.

  Additionally, Chubb has prepared *The Great M&A Wave: Mergers, Acquisitions and Business Discontinuations Risk and Insurance Management Handbook,* which discusses the trends, exposures and strategies to manage the M&A risks.  To order *The Great M&A Wave: Mergers, Acquisitions and Business Discontinuations Risk and Insurance Management Handbook,* simply call **1.866.282.9001,** order 07-01-0101, and provide your mailing address.

### Fiduciary Liability Loss Prevention Services

- *Fiduciary Liability Loss Prevention* Manual
  Written by Dan A. Bailey exclusively for Chubb, *Fiduciary Liability Loss Prevention* discusses general principles governing fiduciary liability and reviews basic fiduciary duties under ERISA. To order *Fiduciary Liability Loss Prevention,* simply call **1.866.282.9001,** order 14-01-0039, and provide your mailing address.

14-02-7990 (Ed. 5/2004) rev.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

## Crime Loss Prevention Services

- **White Collar Crime Loss Prevention Manual**
  Written by Ernst & Young exclusively for Chubb, *White Collar Crime: Loss Prevention through Internal Control* discusses general principles governing workplace crime exposures. To order *White Collar Crime: Loss Prevention through Internal Control,* simply call **1.866.282.9001**, order 14-01-0044, and provide your mailing address.

## Kidnap/Ransom & Extortion Loss Prevention Services

- **Kidnap/Ransom & Extortion Loss Prevention Manuals**
  Chubb offers *Managing Terrorism Risks* and *Managing Travel Risks*, written exclusively for Chubb by the Ackerman Group, Inc., an international security consultant. To order the *Managing Terrorism Risks*, simply call **1.866.282.9001**, order 14-01-0179, and provide your mailing address. To order the *Managing Travel Risks*, simply call **1.866.282.9001**, order 14-01-0178, and provide your mailing address.

--------------------

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, you should consult competent legal counsel to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice.

14-02-7990 (Ed. 5/2004) rev.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Executive Protection Portfolio*
SM

*General Terms and Conditions Section*

DECLARATIONS

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws of Indiana, herein called the Company

Policy Number: 8208-7853

THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD.  THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN.  "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.

Item 1.   **Parent Organization:**   Maritz Holdings Inc.

Principal Address:      1375 North Highway Drive
Fenton, MO 63099

Item 2.   **Policy Period:**   From   12:01 A.M. on    July 30, 2015
To     12:01 A.M. on    July 30, 2016
Local time at the address shown in Item 1.

Item 3.   Coverage Summary
Description:
GENERAL TERMS AND CONDITIONS
CRIME
SPECIAL COVERAGE

14-02-7302DFED (Ed. 11/2002)        Page 1 of 6

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*Executive Protection Portfolio*
SM

*General Terms and Conditions Section*

---

Item 4.  Termination of
Prior Bonds or Policies: 8208-7853  (Jul 30, 2014 - Jul 30, 2015)

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

### FEDERAL INSURANCE COMPANY

_____
Secretary

_____
07/29/15
Date

_____
President

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*General Terms and Conditions Section*

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this policy, the Company and the Insureds agree as follows:

*Territory*

1. Coverage shall extend anywhere in the world.

*Terms and Conditions*

2. Except for these General Terms and Conditions or unless stated to the contrary in any coverage section of this policy, the terms and conditions of each coverage section shall apply only to that coverage section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage section, the terms and conditions of such coverage section shall control for purposes of that coverage section. Any defined term referenced in these General Terms and Conditions but defined in a coverage section shall, for purposes of coverage under that coverage section, have the meaning set forth in that coverage section.

*Definitions*

3. When used in this policy:

   **Claim** shall have the meaning set forth in the applicable coverage section.

   **Insured** shall have the meaning set forth in the applicable coverage section.

   **Parent Organization** means the organization designated in Item 1 of the Declarations of these General Terms and Conditions.

   **Policy Period** means the period of time specified in Item 2 of the Declarations of these General Terms and Conditions, subject to prior termination in accordance with Subsection 11 below. If this period is less than or greater than one year, then the limits of liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period.

*Limits of Liability and Retentions*

4. Unless stated to the contrary in any coverage section, the limits of liability and retentions shown for each coverage section are separate limits of liability and separate retentions pertaining to the coverage section for which they are shown. Unless stated to the contrary in any coverage section of this policy, the payment of a retention under one coverage section shall not constitute payment of, and shall not reduce, the applicable retention under any other coverage section.

*Notice*

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio* <sup>SM</sup>
*General Terms and Conditions Section*

5.  Any notice to the Company with respect to any coverage section shall designate the coverage section under which notice is being given and shall be treated as notice only under the coverage section(s) so designated.

    Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing addressed to:

    > Attn: Claims Department
    > Chubb Group of Insurance Companies
    > 82 Hopmeadow Street
    > Simsbury, Connecticut 06070-7683

    All other notices to the Company shall be given in writing addressed to:

    > Attn: Underwriting
    > Chubb Group of Insurance Companies
    > 82 Hopmeadow Street
    > Simsbury, Connecticut 06070-7683

    Any such notice shall be effective on the date of receipt by the Company at such address.

*Valuation and Foreign Currency*

6.  All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if a judgment is rendered, a settlement is denominated or any element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of loss is due, respectively.

*Subrogation*

7.  In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

*Action Against the Company*

14-02-7302 (Ed. 11/2002)                    Page 4 of 6

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*General Terms and Conditions Section*

8.   No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy.  No person or entity shall have any right under this policy to join the Company as a party to any action against any **Insured** to determine such **Insured**'s liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

### Parent Organization Rights and Obligations

9.   By acceptance of this policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of loss (and the **Parent Organization** further agrees that it shall be responsible for application of any such payment as provided in this policy).  Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

### Alteration and Assignment

10.   No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

### Termination of Policy or Coverage Section

11.   This policy or any coverage section shall terminate at the earliest of the following times:

(a)   sixty days after receipt by the **Parent Organization** of written notice of termination from the Company for any reason other than non-payment of premium;

(b)   twenty days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

(c)   upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this policy may not be terminated by the **Parent Organization** after the effective date of any acquisition of the **Parent Organization** as described in the Changes in Exposure subsection of the applicable coverage section of this policy;

(d)   upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions; or

(e)   at such other time as may be agreed upon by the Company and the **Parent Organization**.

The Company shall refund the unearned premium computed at customary short rates if this policy or any coverage section is terminated by the **Parent Organization**.  Under any other

14-02-7302 (Ed. 11/2002)          Page 5 of 6

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**CHUBB**

*Executive Protection Portfolio*[SM]
*General Terms and Conditions Section*

circumstances the refund shall be computed pro rata.  Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter.

### Termination of Prior Bonds or Policies

12.   Any bonds or policies issued by the Company or its affiliates and specified in Item 4 of the Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of the inception of this policy.

### Bankruptcy

13.   Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this policy.

### Headings

14.   The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# Schedule of Forms

To be attached to and form part of          Company:   Federal Insurance Company
Policy No.   8208-7853

Issued to:   Maritz Holdings Inc.


**Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)**

14-02-5970 (7/05 ed.)

14-02-7508 (5/07 ed.)

14-02-7509 (11/02 ed.)

14-02-7510 (11/02 ed.)

14-02-7926 (2/09 ed.)

14-02-9228 (2/10 ed.)

**Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)**

14-02-10178 (9/04 ed.)

14-02-10570 (3/05 ed.)

14-02-11845 (2/06 ed.)

14-02-12030 (5/06 ed.)

14-02-13300 (7/07 ed.)

14-02-13307 (7/07 ed.)

14-02-13658 (3/14 ed.)

14-02-19233 (3/12 ed.)

14-02-19671 (8/14 ed.)

14-02-21135 (5/14 ed.)

14-02-3037 (11/99 ed.)

14-02-7398 (10/02 ed.)

14-02-7400 (10/02 ed.)

14-02-7402 (10/02 ed.)

14-02-7408 (11/02 ed.)

14-02-7408 (11/02 ed.)

14-02-7408 (11/02 ed.)

14-02-7408 (11/02 ed.)

Form 14-02-0854 (Ed. 04-01)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# Schedule of Forms

To be attached to and form part of
Policy No.   **8208-7853**

Company:   Federal Insurance Company

Issued to:   Maritz Holdings Inc.


14-02-7408 (11/02 ed.)

14-02-8530 (6/03 ed.)

14-02-8574 (7/03 ed.)

14-02-8592 (7/05 ed.)

14-02-8754 (8/03 ed.)

14-02-8787 (9/03 ed.)

14-02-8820 (9/03 ed.)

14-02-8891 (10/03 ed.)

14-02-8907 (10/04 ed.)

14-02-8925 (11/03 ed.)

14-02-8926 (11/03 ed.)

14-02-8927 (11/03 ed.)

14-02-8933 (11/03 ed.)

14-02-9187 (3/04 ed.)

14-02-9261 (4/04 ed.)

14-02-9262 (4/04 ed.)

Q10-592 (3/10 ed.)

Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

14-02-10179 (9/04 ed.)

14-02-10849 (6/05 ed.)

14-02-11774 (2/13 ed.)

14-02-12302 (8/06 ed.)

14-02-12911 (2/07 ed.)

14-02-14224 (5/08 ed.)

14-02-15098 (5/09 ed.)

14-02-15519 (9/14 ed.)

Form 14-02-0854 (Ed. 04-01)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# Schedule of Forms

To be attached to and form part of
Policy No.   8208-7853

Company:   Federal Insurance Company

Issued to:   Maritz Holdings Inc.

14-02-15538 (12/13 ed.)

14-02-7771 (5/08 ed.)

14-02-7821 (6/03 ed.)

14-02-8014 (4/03 ed.)

14-02-8531 (6/03 ed.)

14-02-8797 (9/03 ed.)

14-02-8900 (2/08 ed.)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

## NOTICE TO MISSOURI INSUREDS

This notice is provided in accordance with Bulletin 92-8 of the Missouri Department of Insurance.

Section 375.772.7(d) of the Missouri Property and Casualty Insurance Guaranty Association Act (the "Act") provides that claims covered by the Act do not include a claim by or against an insured of an insolvent insurer if that insured has a net worth of $25 million on the later of the end of the insured's most recent fiscal year or the December thirty-first of the year next preceding the date the insurer becomes an insolvent insurer; provided that an insured's net worth on such date shall be deemed to include the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis.

Section 375.775.1 of the Act provides that the Missouri Property and Casualty Insurance Guaranty Association's obligations may be satisfied by paying to the claimant:

a.      an amount not exceeding $25,000 per policy for a covered claim for the return of unearned premium; or

b.      an amount not exceeding $300,000 per claim for all other covered claims.

Section 375.775.2 of the Act states that the Missouri Property and Casualty Insurance Guaranty Association will not:

a.      Be obligated to an insured or claimant in excess of the limits of liability of the policy from which the claim arises; or

b.      Return to the insured any unearned premium in excess of $25,000.

14-02-5970 (07/2005)              Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement:  July 30, 2015

Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

## RIDER TO APPLICATION - MISSOURI APPLICANTS ONLY

IT IS UNDERSTOOD AND AGREED THAT:

(1)   THE POLICY CONTAINS COVERAGE SECTIONS WITH DEFENSE WITHIN LIMITS PROVISIONS, WHICH MEANS THAT DEFENSE COSTS WILL REDUCE THE APPLICABLE LIMITS OF LIABILITY AND MAY EXHAUST SUCH LIMITS COMPLETELY, UNLESS OTHERWISE PROVIDED IN THE POLICY; AND

(2)   SHOULD DEFENSE COSTS EXHAUST THE APPLICABLE LIMITS OF LIABILITY UNDER THE POLICY, THE INSURED WILL BE LIABLE FOR ANY FURTHER DEFENSE COSTS, LOSS, EXPENSES AND DAMAGES; AND

(3)   THE POLICY DEFINES "DEFENSE COSTS" TO MEANS THAT PART OF LOSS CONSISTING OF REASONABLE COSTS, CHARGES, FEES (INCLUDING BUT NOT LIMITED TO ATTORNEYS' FEES AND EXPERTS' FEES) AND EXPENSES (OTHER THAN REGULAR OR OVERTIME WAGES, SALARIES, FEES, BENEFITS OR STOCK BENEFITS OF THE DIRECTORS, OFFICERS OR EMPLOYEES OF THE ORGANIZATION) INCURRED IN DEFENDING CLAIMS AND THE PREMIUM FOR APPEAL, ATTACHMENT OR SIMILAR BONDS.  DEFENSE COSTS DO NOT INCLUDE THE REGULAR OR OVERTIME WAGES, SALARIES OR FEES OF THE DIRECTORS, OFFICERS OR EMPLOYEES OF THE INSURER.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement:  July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

## NOTICE TO MISSOURI INSUREDS
### IMPORTANT NOTICE - INSURANCE COMPANY CONTACT INFORMATION

To obtain information or make a complaint:

You may call the Company's toll-free telephone number for information or to make a complaint at:

1-800-432-8168

You may also write to the Company at:

82 Hopmeadow Street
Simsbury, CT  06070-7683

ATTACH THIS NOTICE TO YOUR POLICY:   This notice is for information only and does not become a part
or condition of the attached document.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement:  July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 4

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

## MISSOURI AMENDATORY ENDORSEMENT
## TO THE GENERAL TERMS AND CONDITIONS SECTION

In consideration of the premium charged, it is agreed that:

1.   Subsection 11. Termination of Policy or Coverage Section (a) of the General Terms and Conditions Section is amended to add the following to the end of such paragraph (a):

   "provided that, if the Crime Coverage Section or the Kidnap/Ransom and Extortion Coverage Section have been issued, the Company may cancel either or both of such coverage sections, other than for non-payment of premium, only for one or more of the following reasons:

   (1)   fraud or material misrepresentation affecting this policy or in the presentation of a claim or notice of loss thereunder or a violation of any of the terms or conditions of this policy;

   (2)   changes in conditions after the effective date of this policy that have materially increased the hazards originally insured;

   (3)   insolvency of the Company; or

   (4)   involuntary loss of reinsurance for this policy.

2.   Subsection 11. Termination of Policy or Coverage Section (d) of the General Terms and Conditions Section is amended to add the following:

   "provided that, if either the Crime Coverage Section or the Kidnap/Ransom and Extortion Coverage Section has been issued, if the Company does not renew either or both of such coverage sections, the Company will mail or deliver at least sixty (60) days' advance written notice of non-renewal of such coverage sections to the Parent Organization at its last known address."

3.   Subsection 11. Termination of Policy or Coverage Section of the General Terms and Conditions is amended further to add the following at the end of such Subsection:

   "Any notice of cancellation or non-renewal by the Company of the Crime Coverage Section or the Kidnap/Ransom and Extortion Coverage Section of this policy will state the precise reason(s) for such cancellation or non-renewal."

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

4.      Nothing in this Amendatory Endorsement amends the provisions of Subsection 11. Termination of Policy or Coverage Section of the General Terms and Conditions Section as such provisions apply to the Executive Liability and Entity Securities Liability Coverage Section, the Outside Directorship Liability Coverage Section, the Fiduciary Liability Coverage Section or the Employment Practices Liability Coverage Section, to the extent that any such coverage sections have been issued.

5.      References in this Amendatory Endorsement to a particular coverage section are applicable only to the extent that such coverage section has been issued to the Parent Organization.   The coverage sections issued to the Parent Organization are those set forth in the applicable Declarations and nothing herein is intended to, nor does it, establish coverage under any coverage section that has not been issued to the Parent Organization as part of the policy.

The policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Missouri.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

### AMEND SUBSECTION 11 ENDORSEMENT

In consideration of the premium charged, it is agreed that, solely with respect to the coverage section identified above, clause (a) of Subsection 11. Termination of Policy or Coverage Section is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015          Federal Insurance Company

                                               Endorsement/Rider No. 6

                                               To be attached to and
                                               form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-9228 (2/2010)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Executive Protection Portfolio* [SM]
*Crime Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws of Indiana, herein called the Company

**READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization:**
Maritz Holdings Inc.
1375 North Highway Drive
Fenton, MO 63099

Item 2. Insuring Clauses:                                                                Limits of Liability:

| | | | |
|---|---|---|---|
| (A) | Insuring Clause  1 - Employee Theft Coverage: | | $5,000,000.00 |
| (B) | Insuring Clause  2 - Premises Coverage: | | $5,000,000.00 |
| (C) | Insuring Clause  3 - In Transit Coverage: | | $5,000,000.00 |
| (D) | Insuring Clause  4 - Forgery Coverage: | | $5,000,000.00 |
| (E) | Insuring Clause  5 - Computer Fraud Coverage: | | $5,000,000.00 |
| (F) | Insuring Clause  6 - Funds Transfer Fraud Coverage: | | $5,000,000.00 |
| (G) | Insuring Clause 7 - Money Orders And Counterfeit Fraud Coverage: | | Not Covered |
| (H) | Insuring Clause  8 - Credit Card Fraud Coverage: | | $250,000.00 |
| (I) | Insuring Clause  9 - Client Coverage: | | $5,000,000.00 |
| (J) | Insuring Clause 10 - Expense Coverage: | | $150,000.00 |

Item 3.  Retention:                                                          $100,000.00

Item 4.  **Organization**

Maritz Holdings Inc. and its Subsidiaries

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**Executive Protection Portfolio**$^{SM}$
*Crime Coverage Section*

In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:

*Insuring Clauses*

*Employee Theft Coverage Insuring Clause 1*

1.  The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.

*Premises Coverage Insuring Clause 2*

2.  The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from:

    (a)  the unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

    (b)  the actual destruction or disappearance of **Money** or **Securities**,

    within or from the **Premises** or **Banking Premises**.

    Coverage under this Insuring Clause shall also include:

    (i)  direct loss of or damage to **Property** which results from **Robbery** or attempted **Robbery** within the **Premises**;

    (ii)  direct loss of or damage to **Property** contained within any locked vault or safe which results from **Safe Burglary** or attempted **Safe Burglary** within the **Premises**;

    (iii)  damage to a locked safe, cash drawer, cash box or cash register within the **Premises** by felonious entry or attempted felonious entry or loss by felonious abstraction of such container from within the **Premises**; and

    (iv)  damage to the **Premises** which results from **Robbery** or **Safe Burglary**,

    committed by a **Third Party**.

*In Transit Coverage Insuring Clause 3*

3.  The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from:

    (a)  the unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

    (b)  the actual destruction or disappearance of **Money** or **Securities**,

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**Executive Protection Portfolio**<sup>SM</sup>
*Crime Coverage Section*

while **In Transit** or while temporarily within the home of an **Employee** or an **Organization**.

Coverage under this Insuring Clause shall also include:

(i) direct loss of or damage to **Property** which results from **Robbery** while **In Transit**; and

(ii) direct loss which results from the unlawful taking of **Property** temporarily within the home of an **Employee** or an **Organization**,

committed by a **Third Party**.

---

*Forgery Coverage Insuring Clause 4*

4.  The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**, including:

(a) any check or draft made or drawn in the name of such **Organization** payable to a fictitious payee and endorsed in the name of such fictitious payee;

(b) any check or draft procured in a face to face transaction with such **Organization** or with one acting as the agent of such **Organization** by a **Third Party** impersonating another and made or drawn payable to the one impersonated and endorsed by a **Third Party** other than such one impersonated; and

(c) any payroll check, payroll draft or payroll order made or drawn by such **Organization** payable to bearer as well as to a named payee and endorsed by a **Third Party** other than such named payee without the authority of such named payee.

---

*Computer Fraud Coverage Insuring Clause 5*

5.  The Company shall pay the **Parent Organization** for direct loss of **Money, Securities** or **Property** sustained by an **Organization** resulting from **Computer Fraud** committed by a **Third Party**.

---

*Funds Transfer Fraud Coverage Insuring Clause 6*

6.  The Company shall pay the **Parent Organization** for direct loss of **Money** or **Securities** sustained by an **Organization** resulting from **Funds Transfer Fraud** committed by a **Third Party**.

14-02-7307 (Ed. 11/2002)          Page 3 of 17

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM


**CHUBB**

*Executive Protection Portfolio*[SM]
*Crime Coverage Section*

---

*Money Orders And Counterfeit Currency Fraud Coverage Insuring Clause 7*

7.    The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Money Orders And Counterfeit Currency Fraud** committed by a **Third Party.**

---

*Credit Card Fraud Coverage Insuring Clause 8*

8.    The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Credit Card Fraud** committed by a **Third Party.**

---

*Client Coverage Insuring Clause 9*

9.    The Company shall pay the **Parent Organization** for direct loss of **Money, Securities** or **Property** sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees.

---

*Expense Coverage Insuring Clause 10*

10.   The Company shall pay the **Parent Organization** for:

(a)   **Investigative Expenses** resulting from any loss covered under Insuring Clauses 1 through 9 incurred by an **Organization**, but only if such covered loss under Insuring Clauses 1 through 9 is in excess of the Retention applicable to such covered loss;

(b)   **Computer Violation Expenses** resulting from any loss covered under Insuring Clause 1, 5 or 9 incurred by an **Organization**, but only if such covered loss under Insuring Clause 1, 5 or 9 is in excess of the Retention applicable to such covered loss.

No Retention shall apply to **Investigative Expenses** or **Computer Violation Expenses** covered under Insuring Clause 10.

---

### Definitions

11.   When used in this coverage section:

**Banking Premises** means the interior portion of a building occupied by, or the night depository chute or safe maintained by, any bank, trust company or similar financial institution.

**Client** means a customer of an **Organization** to whom such **Organization** provides goods or services under written contract or for a fee.

**Computer Fraud** means the unlawful taking or the fraudulently induced transfer of **Money, Securities** or **Property** resulting from a **Computer Violation.**

**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

that such computer and facilities are owned and operated or leased and operated by an **Organization**.

**Computer Violation** means the fraudulent:

(a)   entry of **Data** into or deletion of **Data** from a **Computer System**;

(b)   change to **Data** elements or program logic of a **Computer System**, which is kept in machine readable format; or

(c)   introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**,

directed against an **Organization**.

**Computer Violation Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization**, with the Company's prior written consent, to reproduce or duplicate damaged or destroyed **Data** or computer programs. If such **Data** or computer programs cannot be duplicated from other **Data** or computer programs, then **Computer Violation Expenses** shall also include reasonable costs incurred for computer time, computer programmers, technical experts or consultants to restore such **Data** or computer programs to substantially the same level or operational capability existing immediately before the covered loss. **Computer Violation Expenses** shall not include expenses incurred by any **Client**.

**Credit Card Fraud** means the **Forgery** or alteration of, on or in any written instrument required in connection with any credit card issued to an **Organization** or, at the request of an **Organization**, to an **Employee**.

**Data** means a representation of information, knowledge, facts, concepts or instructions which are processed and stored in a **Computer System**.

**Discovery** or **Discovered** means an **Executive** or **Insurance Representative** has become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this coverage section has occurred or acts have taken place that may subsequently result in a loss of a type covered by this coverage section. This includes loss:

(a)   sustained prior to the inception date of any coverage under this coverage section;

(b)   which is within the applicable Retention as set forth in Item 3 of the Declarations for this coverage section; or

(c)   for which the exact amount or details are unknown.

**Discovery** or **Discovered** shall not include knowledge acquired by an **Executive** or **Insurance Representative** acting alone in a **Theft** or **Forgery,** or acting in collusion with any **Employee** in a **Theft** or **Forgery**.

**Employee** means any:

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

(a)    natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** compensates by **Salary** and has the right to govern and direct in the performance of such service, including any part-time, seasonal, leased or temporary employee;

(b)    natural person volunteer while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** has the right to govern and direct in the performance of such service;

(c)    **Executive** while performing acts within the scope of the usual duties of an **Employee**; or

(d)    natural person fiduciary, trustee, administrator or other plan official, while in the regular service of an **ERISA Plan**, who is required to be bonded by an **Organization** in connection with such **ERISA Plan** by Title 1 of the Employee Retirement Income Security Act of 1974, as amended.

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, defined and required to be bonded under Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

**Executive** means any natural person specified below:

(a)    duly elected or appointed director, officer, member of the Board of Managers or management committee member of an **Organization** chartered in the United States of America;

(b)    in–house general counsel of an **Organization** chartered in the United States of America;

(c)    equivalent positions of (a) or (b) above in an **Organization** chartered in any other jurisdiction anywhere in the world; or

(d)    a partner of an **Organization** while engaged in the regular service of such **Organization**.

**Financial Instrument** means a check, draft or similar written promise, order or direction to pay a sum certain in **Money** that is made, drawn by or drawn upon an **Organization** or made or drawn by anyone acting as an **Organization's** agent, or that is purported to have been so made or drawn.

**Forgery** means the signing of the name of another natural person or organization, with the intent to deceive, but does not mean a signature that includes, in whole or in part, one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

**Funds Transfer Fraud** means fraudulent electronic, telegraphic, cable, teletype, facsimile, telephone or written instructions (other than **Forgery**), purportedly issued by an **Organization**, and issued to a financial institution directing such institution to transfer, pay

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM


**CHUBB**

### Executive Protection Portfolio<sup>SM</sup>
*Crime Coverage Section*

or deliver **Money** or **Securities** from any account maintained by such **Organization** at such institution, without such **Organization's** knowledge or consent.

**Insurance Representative** means any **Employee**, including a risk manager, designated to represent an **Insured** for the purpose of effecting and maintaining insurance.

**Insured** means any **Organization** and, for the purposes of Insuring Clause 1, any **ERISA Plan** or **Non-ERISA Plan**.

**In Transit** means being conveyed outside the **Premises**, from one person or place to another, by an **Organization** within the custody of:

(a)     an **Employee**; or

(b)     a person duly authorized by such **Organization** to have custody of such **Money**, **Securities** or **Property**.

Such conveyance begins immediately upon receipt of **Money**, **Securities** or **Property** by the person(s) described in (a) or (b) above from such **Organization**, and ceases immediately upon delivery to the designated recipient or its agent.

**Investigative Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization**, with the Company's prior written consent, to establish the existence and amount of a covered loss. **Investigative Expenses** shall not include expenses incurred by any **Client**.

**Money** means currency, coin, bank notes and bullion.

**Money Orders And Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:

(a)     in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

(b)     in the regular course of business, of counterfeit United States of America or Canadian paper currency.

**Non-ERISA Plan** means any employee benefit plan not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

**Organization** means any organization designated in Item 4 of the Declarations for this coverage section.

**Premises** means the interior portion of a building occupied by an **Organization** in conducting its business.

**Property** means tangible property other than **Money or Securities**.



*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

**Robbery** means the unlawful taking of **Money, Securities** or **Property** from the custody of an **Employee**, or other person (except a person acting as a watchman, porter or janitor) duly authorized by an **Organization** to have custody of such **Money, Securites** or **Property**, by violence or threat of violence, committed in the presence and cognizance of such **Employee** or other person.

**Safe Burglary** means the unlawful taking of **Money, Securities** or **Property**, by forcible or violent entry evidenced by visible marks, from a locked vault or safe located within the **Premises**.

**Salary** means compensation an **Organization** pays an **Employee**, including bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

**Securities** means negotiable and non-negotiable instruments or contracts representing either **Money** or **Property**.

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors, members of the Board of Managers, or management committee members of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Theft** means the unlawful taking of **Money, Securities** or **Property** to the deprivation of:

(a)   an **Insured**, solely for the purposes of Insuring Clause 1; or

(b)   a **Client**, solely for the purposes of Insuring Clause 9.

**Third Party** means a natural person other than:

(a)   an **Employee**; or

(b)   a natural person acting in collusion with an **Employee**.

---

## Exclusions

12.   No coverage will be available under this coverage section for:

(a)   loss resulting directly or indirectly from any authorized or unauthorized trading of **Money, Securities** or **Property**, whether or not in the name of an **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion 12(a) shall not apply to otherwise covered loss under Insuring Clause 1 which results in improper financial gain to an **Employee** (such loss shall mean only the amount of improper financial gain to such **Employee**, and shall not include **Salary**, commissions, fees or other compensation, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**);

(b)   loss of any trade secret, confidential processing method or other confidential information of any kind;

(c)   loss due to **Theft** or **Forgery** committed by a partner of an **Organization**, whether acting alone or in collusion with others; provided that, if such **Theft** or **Forgery** would

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

    otherwise be covered under Insuring Clause 1 or 9, this Exclusion 12(c) shall not apply to the extent coverage under this coverage section is excess of the amount of such partner's percentage ownership of such **Organization**, on the day immediately preceding the date of **Discovery**, multiplied by such **Organization's** total assets as reflected in such **Organization's** most recent audited financial statements;

(d)    loss or damage due to declared or undeclared war, civil war, insurrection, rebellion, revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization, or any act or condition incident to any of the foregoing;

(e)    loss or damage due to nuclear reaction, nuclear radiation or radioactive contamination, or any act or condition incident to any of the foregoing;

(f)    loss of income not realized as the result of a covered loss;

(g)    indirect or consequential loss or damage of any kind; provided that this Exclusion 12(g) shall not apply to otherwise covered **Investigative Expenses** and **Computer Violation Expenses** under Insuring Clause 10;

(h)    fees, costs or expenses incurred or paid:

    (i)    as a result of the reconstitution of **Data** if an **Organization** knowingly used illegal copies of programs;

    (ii)    to render the **Data** usable by replacement processing equipment;

    (iii)    to design, update or improve software or programs or to perfect their operation or performance; or

    (iv)    as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the computer or its facilities;

(i)    fees, costs or expenses incurred or paid in defending or prosecuting any legal proceeding or claim; provided that this Exclusion 12(i) shall not apply to the coverage provided under Subsection 22 Legal Expenses Extension;

(j)    loss or damage due to fire; provided that this Exclusion 12(j) shall not apply to:

    (i)    loss of **Money** or **Securities**; or

    (ii)    damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**;

(k)    loss due to an **Insured** knowingly having given or surrendered **Money, Securities** or **Property** in any exchange or purchase with a **Third Party**; provided that this Exclusion 12(k) shall not apply to otherwise covered loss under Insuring Clause 7 or otherwise covered loss of **Property** under Insuring Clause 5;

(l)    loss sustained by one **Insured** to the advantage of any other **Insured**;

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

(m)    loss of or damage to **Money, Securities** or **Property** while in the custody of any bank, trust company, similar recognized place of safe deposit, armored motor vehicle company or any person who is duly authorized by an **Organization** to have custody of such **Money, Securities** or **Property**; provided that this Exclusion 12(m) shall not apply to the extent that coverage under this coverage section is excess of the amount recovered or received by such **Organization** under:

(i)     such **Organization's** contract, if any, with, or insurance carried by, any of the foregoing; or

(ii)    any other insurance or indemnity in force which would cover the loss in whole or in part; or

(n)    loss or damage due to **Theft, Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders And Counterfeit Currency Fraud, Credit Card Fraud** or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others; provided that this Exclusion 12(n) shall not apply to otherwise covered loss under Insuring Clause 1 or 9 resulting from **Theft** or **Forgery** committed by an **Employee** acting in collusion with such authorized representative.

13.   No coverage will be available under Insuring Clause 1 or 9 for:

(a)    loss caused by any agent, broker, factor, commission merchant, consignee, contractor, independent contractor, subcontractor or other similar representative; or

(b)    loss caused by an **Employee** which is sustained by an **Insured**:

(i)     after an **Executive** or **Insurance Representative** becomes aware of a **Theft, Forgery** or other fraudulent, dishonest or criminal act committed by such **Employee** while employed with or in the service of an **Insured**;

(ii)    after an **Executive** or **Insurance Representative** becomes aware of a **Theft, Forgery** or other fraudulent, dishonest or criminal act, involving **Money, Securities** or other property valued at twenty-five thousand dollars ($25,000) or more, committed by such **Employee** prior to employment or service with an **Insured**; or

(iii)   more than sixty (60) days following the termination of such **Employee**.

14.   No coverage will be available under Insuring Clause 2 or 3 for:

(a)    loss or damage due to **Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders And Counterfeit Currency Fraud** or **Credit Card Fraud**; or

(b)    loss of or damage to **Money, Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company.

15.   No coverage will be available under Insuring Clause 2, 3, 5, or 6 for loss or damage as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property.

16.   No coverage will be available under Insuring Clause 4 for loss due to **Forgery** or alteration of any registered or coupon obligation issued or purported to have been issued by an **Insured**, or any coupon whether attached or detached.

17    No coverage will be available under Insuring Clause 5 for loss caused by a **Third Party** which is sustained by an **Organization** sixty (60) days or more after an **Organization** becomes aware of a **Computer Fraud** or other fraudulent, dishonest or criminal act committed by such **Third Party**.

18.   No coverage will be available under Insuring Clause 8 for loss caused by any forgery or alteration of, on or in any written instrument; provided that this Exclusion 18 shall not apply if:

(a)   the provisions, conditions and other terms under which the involved credit card was issued were fully complied with; and

(b)   an **Organization** is legally liable to the issuer of such credit card for such loss.

19.   No coverage will be available under this coverage section for:

(a)   loss unless sustained by an **Insured** prior to the termination of this coverage section as to such **Insured**, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

(b)   loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination; or

(c)   loss unless sustained prior to the termination of this coverage section in its entirety, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause.

---

*Ownership*

20.   Solely for the purposes of Insuring Clauses 1 through **8**, the Company's liability under this coverage section will apply only to **Money, Securities** or **Property** owned by the **Organization** or for which the **Organization** is legally liable, or held by the **Organization** in any capacity whether or not the **Organization** is liable; provided that:

(a)   the Company's liability will not apply to damage to the **Premises** unless the **Organization** is the owner of such **Premises** or is legally liable for such damage; or

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

(b)     with respect to Insuring Clause 1, the Company's liability will not apply to **Money, Securities** or **Property** of a **Client**.

Solely for the purposes of Insuring Clause 9, the Company's liability under this coverage section will apply only to **Money, Securities** or **Property** owned by a **Client**, which is held by the **Organization** in any capacity or for which the **Organization** is legally liable.

---

### ERISA Plan

21.     Solely with respect to loss sustained by an **ERISA Plan**, payment by the Company for covered loss to the **Parent Organization** shall be held by such **Parent Organization** for the use and benefit of the **ERISA Plan** sustaining such loss.

Solely with respect to loss sustained by an **ERISA Plan**:

(a)     Insuring Clause 1 is amended to read in its entirety as follows:

The Company shall pay the **Parent Organization** for direct loss of **Money, Securities** or **Property** sustained by an **ERISA Plan** resulting from a fraudulent or dishonest act committed by an **Employee** acting alone or in collusion with others.

(b)     The words "sixty (60) days" are deleted from Exclusion 19 of this coverage section, wherever they appear in such Exclusion, and the words "one (1) year" are substituted in place thereof.

No Retention shall apply to loss sustained by an **ERISA Plan** covered under this coverage section.

---

### Legal Expenses Extension

22.     In addition to the Limits of Liability set forth in the Declarations for this coverage section, the Company shall pay the **Parent Organization** for:

(a)     As a result of loss covered under Insuring Clause 4, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** or an **Organization's** bank in any legal proceeding brought against it to enforce payment of a **Financial Instrument**;

(b)     As a result of loss covered under Insuring Clause 8, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** in any legal proceeding brought against it to enforce payment of a written instrument, required in connection with any credit card.

---

### Changes in Exposure

23.     If before or during the **Policy Period** any **Organization**:

(a)     acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**CHUBB**

*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

(b)   acquires another organization by merger into or consolidation with such **Organization** such that such **Organization** is the surviving entity,

then coverage shall be provided for such acquired organization or new **Subsidiary** after the effective date of such acquisition or creation.

If the total revenues of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total revenues of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such information as the Company in its sole discretion may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired organization or new **Subsidiary** shall be null and void from the date of such acquisition or creation. Coverage for such acquired organization or new **Subsidiary** shall be subject to such additional or different limitations, conditions, provisions or other terms as the Company in its sole discretion may require.

## Liability For Prior Losses

24.   In the event of loss sustained prior to the inception date of this coverage section, prior to the effective date of coverage for any additional insureds or prior to the effective date of any coverage added by endorsement, which would otherwise be covered under this coverage section, such prior loss shall be afforded coverage subject to the following:

(a)   an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy, which at the time such prior loss was sustained, afforded some or all of the coverage of an Insuring Clause under this coverage section applicable to such prior loss;

(b)   such coverage continued without interruption from the time such prior loss was sustained until the inception date or effective date(s) as described above;

(c)   such prior loss was first **Discovered** by an **Insured** after the time allowed for discovery under the last such policy; and

(d)   some or all of the coverage of an Insuring Clause under this coverage section would be applicable to such prior loss.

If such prior bond or policy carried by the **Insured** or predecessor in interest of such **Insured** was issued by the Company or its affiliates, such prior bond or policy shall terminate as of the inception of this coverage section and such prior bond or policy shall not cover any loss not discovered and noticed to the Company prior to the inception of this coverage section.
The **Insured** shall neither be entitled to a separate recovery of the limits of each policy in force at the time any part of the prior loss was sustained, nor shall the **Insured** be entitled to recover the sum of the limits of liability of any such policies. The Company's maximum liability for such prior loss shall not exceed the lesser of the limit of liability of the policy in

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio* <sup>SM</sup>
*Crime Coverage Section*

force at the time such prior loss was sustained, or the applicable Limit of Liability as set forth in the Declarations for this coverage section.

*Limits of Liability and Retention*

25.   Subject to Subsection 24 Liability for Prior Losses, the Company shall only be liable for loss sustained by an **Insured** during the **Policy Period**.

The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations for this coverage section, regardless of the number of **Insureds** sustaining such loss.

The Company's maximum liability shall not exceed the Limit of Liability:

(a)   Applicable to Insuring Clause 1 as set forth in Item 2(A) of the Declarations for this coverage section: for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**;

(b)   Applicable to Insuring Clause 2 as set forth in Item 2(B) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event **or** series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(c)   Applicable to Insuring Clause 3 as set forth in Item 2(C) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(d)   Applicable to Insuring Clause 4 as set forth in Item 2(D) of the Declarations for this coverage section: for all loss resulting from any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**;

(e)   Applicable to Insuring Clause 5 as set forth in Item 2(E) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(f)   Applicable to Insuring Clause 6 as set forth in Item 2(F) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**CHUBB**

*Executive Protection Portfolio*<sup>SM</sup>

*Crime Coverage Section*

of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(g)   Applicable to Insuring Clause 7 as set forth in Item 2(G) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(h)   Applicable to Insuring Clause 8 as set forth in Item 2(H) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(i)   Applicable to Insuring Clause 9 as set forth in Item 2(I) of the Declarations for this coverage section: for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**; or

(j)   Applicable to Insuring Clause 10 as set forth in Item 2(J) of the Declarations for this coverage section: for all **Investigative Expenses** or **Computer Violation Expenses** resulting from any applicable covered loss.

If a loss is covered under more than one Insuring Clause, the maximum amount payable under this coverage section shall not exceed the largest applicable Limit of Liability of any such Insuring Clause.

The Company's liability under this coverage section shall apply only to that part of each loss which is in excess of the applicable Retention set forth in Item 3 of the Declarations for this coverage section.

---

*Non-Accumulation of Liability*

26.   When there is more than one **Insured**, the maximum liability of the Company for loss sustained by any or all **Insureds** shall not exceed the amount for which the Company would be liable if all loss was sustained by any one **Insured**.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, whether under this coverage section, any prior bond or policy, or any renewal or replacement of this coverage section, the liability of the Company with respect to any loss shall not be cumulative from year to year or from policy period to policy period.

*Proof of Loss and Legal Proceedings*

27.   Knowledge possessed by any **Insured** or **Discovery** shall be deemed knowledge possessed by or discovery by all **Insureds**.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

It is a condition precedent to coverage hereunder that, upon **Discovery**, the **Parent Organization** will:

(a)  give written notice to the Company at the earliest practicable moment, and in no event later than ninety (90) days after such **Discovery**;

(b)  furnish affirmative proof of loss with full particulars to the Company at the earliest practicable moment, and in no event later than six (6) months after such **Discovery**;

(c)  submit to examination under oath at the Company's request;

(d)  produce all pertinent records at such reasonable times and places as the Company shall designate; and

(e)  provide full cooperation with the Company in all matters pertaining to a loss or claim.

The **Parent Organization** may not offer, as a part of any proof of loss, any computation or comparison which involves in any manner a profit and loss computation or comparison. The **Parent Organization** may offer a comparison between an **Organization's** or **Client's** inventory records and actual physical count of its inventory to prove the amount of loss, only where an **Organization** or **Client** establishes wholly apart from such comparison that it has sustained a covered loss caused by an identified **Employee**.

No **Insured** shall institute legal proceedings against the Company:

(a)  after two (2) years immediately following any **Discovery**; or

(b)  to recover a judgment or settlement against it or its bank resulting from **Forgery, Credit Card Fraud** or related legal expenses as set forth in Subsection 22 Legal Expenses Extension, after two (2) years immediately following the date upon which such judgment shall become final or settlement was entered.

*Valuation and Foreign Currency*

28.  The Company shall pay:

(a)  the least of:

(i)  the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**;

(ii)  the cost of replacing **Securities**; or

(iii)  the cost to post a Lost Instrument Bond;

(b)  the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

(c)  the least of:

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**CHUBB**

*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

(i)   the actual cash value of **Property**; or

(ii)  the cost to repair or replace **Property**, other than precious metals, with that of similar quality and value,

at the time the **Parent Organization** complies with Subsection 27 Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss;

(d)  the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**; or

(e)  the United States of America dollar value of any precious metal based on the amount published in *The Wall Street Journal* Cash Prices, Precious Metals, on the day loss involving such precious metal is **Discovered**.

---

*Recoveries*

29.  Recoveries for any loss covered under this coverage section, whether effected by the Company or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(a)  first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(b)  second, to the Company for the amount of such loss paid to an **Insured** as covered loss;

(c)  third, to an **Insured** for the Retention applicable to such loss;

(d)  fourth, to an **Insured** for the amount of such loss not covered under this coverage section.

Recovery from reinsurance or indemnity of the Company shall not be deemed a recovery hereunder.

---

*Other Insurance*

30.  If any **Insured** or any other party in interest in any loss covered by this coverage section has any bond, indemnity or insurance which would cover such loss in whole or in part in the absence of this coverage section, then this coverage section shall be null and void to the extent of the amount recoverable or received under such bond, indemnity, or insurance; provided that this coverage section shall cover such loss, subject to its limitations, conditions, provisions and other terms, to the extent of the amount of such loss in excess of the amount recoverable or received under such bond, indemnity or insurance.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

AMEND DEFINITION OF SUBSIDIARY ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Subsidiary** as defined in Subsection 11 Definitions of this coverage section is amended to include any organization whose operation is managed or controlled by an **Organization** pursuant to a management agreement.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-10178 (9/2004)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

AMEND PROOF OF LOSS AND LEGAL PROCEEDINGS ENDORSEMENT

In consideration of the premium charged, it is agreed that the third paragraph of Subsection 27, Proof of Loss and Legal Proceedings, of this coverage section is amended to read in its entirety as follows:

> The **Parent Organization** may not offer, as a part of any proof of loss, any computation or comparison which involves in any manner a profit and loss computation or comparison.  The **Parent Organization** may offer a comparison between an **Organization's** or **Client's** inventory records and actual physical count of its inventory to prove the amount of loss, only where an **Organization** or **Client** establishes wholly apart from such comparison that it has sustained a covered loss caused by an **Employee**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015          Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

AMEND SUBSECTION 28(c) VALUATION AND FOREIGN CURRENCY ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (c) of Subsection 28, Valuation and Foreign Currency, of this coverage section is amended to read in its entirety as follows:

(c)     the cost to repair or replace **Property**, other than precious metals, with that of similar quality and value at the time the **Parent Organization** complies with Subsection 27 Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-11845 (02/2006)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

AMEND DEFINITION OF EMPLOYEE TO INCLUDE NON-COMPENSATED OFFICERS ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of **"Employee"** as defined in Subsection 11 Definitions of this coverage section is amended to include  "Non-Compensated Officers" (as defined below).

For purposes of this endorsement, the term "Non-Compensated Officers" means non-compensated dues collectors, shop stewards, shop chairpersons, and other directors or trustees acting as members of any committee duly elected or appointed by resolution of the board of directors or trustees to perform specific, as distinguished from general, directorial acts while in the service of an **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

AMEND EMPLOYEE THEFT COVERAGE INSURING CLAUSE ENDORSEMENT

In consideration of the premium charged, it is agreed that Insuring Clause (1), Employee Theft Coverage, of this coverage section is deleted and replaced with the following:

1.      Employee Theft Coverage Insuring Clause 1

The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with others.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

CLIENT CUSTOMER COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Subsection I, Insuring Clause (9), Client Coverage, of the coverage section identified above is amended to
        include the following:

        The Company shall pay the **Parent Organization** for direct loss of **Money, Securities** or **Property**
        sustained by a **Client Customer** resulting from **Theft** or **Forgery** to the deprivation of such **Client
        Customer** committed by an **Employee** not in collusion with the **Client's** employees, such **Client
        Customer**, or such **Client Customer's** employees, provided that such loss is sustained solely as a result of
        services performed by the **Parent Organization** for the **Client** under written contract or for a fee.

(2)     For the purposes of this endorsement, the term **Client Customer** means a customer of a **Client** to whom
        such **Client** provides services under written contract or for a fee.

(3)     Subsection 20, Ownership, of the coverage section identified above is deleted and replaced with the
        following:

        (A)     Solely for the purposes of Insuring Clauses (1) through (8), the Company's liability under this
                Coverage Section will apply only to the **Money, Securities** or **Property** owned by the
                **Organization** or for which the **Organization** is legally liable, or held by the **Organization** in any
                capacity whether or not the **Organization** is liable; provided that:

                (1)     the Company will not be liable for damage to the **Premises** unless the **Organization** is the
                        owner or is liable for such damage; **or**

                (2)     with respect to Insuring Clause (1) the Company's liability will not apply to **Money,
                        Securities** or **Property** of a **Client** or a **Client Customer**.

        (B)     Solely for the purposes of Insuring Clause (9), the Company's liability under this coverage section
                will apply only to the **Money, Securities** or other **Property** of a **Client** or a **Client Customer**, which
                is held by the **Organization** in any capacity or for which the **Organization** is legally liable.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015          Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

PENSION PROTECTION ACT ENHANCEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The definition of **Employee** as defined in Subsection 11., Definitions, of this coverage section,
        subparagraph (d) is deleted and replaced with the following:

        (d)     natural person fiduciary, trustee, administrator or other plan official, while in the regular
                service of an **ERISA Plan**, and any other natural person who handles **ERISA Plan** assets
                who is required to be bonded by an **Organization** in connection with such **ERISA Plan**
                by Title 1 of the Employee Retirement Income Security Act of 1974, as amended, and as
                amended by the Pension Protection Act of 2006.

(2)     The definition of **ERISA Plan** as defined in Subsection 11., Definitions, of this coverage section,
        is deleted and replaced with the following:

        **ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit
        Plan, defined and required to be bonded under Title 1 of the Employee Retirement
        Income Security Act of 1974, as amended, and the Pension Protection Act of 2006, which
        is operated solely by an **Organization** or jointly by an **Organization** and a labor
        organization for the benefit of **Employees** and which existed on or before the inception of
        this coverage section or which is created or acquired after the inception of this coverage
        section.

(3)     Subsection 21, **ERISA Plan**, the first full paragraph is deleted and replaced with the following:

        Solely with respect to loss sustained by an **ERISA Plan**, payment by the Company for
        covered loss shall be to the **ERISA Plan** sustaining such loss.  If such payment is in
        excess of the amount of coverage required by the Employee Retirement Income Security
        Act of 1974, as amended, for said Plan(s), such excess shall be held for the use and
        benefit of any other named Plan(s) should such Plan(s) also discover loss recoverable
        hereunder.

        With respect to any **ERISA Plan**:

        a.     if covered loss is sustained by any **ERISA Plan** which does not have any employer
               securities, the Limit of Liability applicable to such covered loss shall be the lesser of

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's** fiscal year or five hundred thousand dollars ($500,000); or

b.   if covered loss is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered loss shall be the lesser of ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's** fiscal year or one million ($1,000,000);

provided that, in all events, (i) if the applicable Limit of Liability as set forth in Item 2 of the Declarations of this coverage section is less than the amounts set forth in paragraphs a. or b. above, then the applicable Limit of Liability shall be amended to the respective amounts set forth in paragraphs a. or b. above; or (ii) if the applicable Limit of Liability as set forth in Item 2 of the Declarations of this coverage section equals or exceeds the amounts set forth in paragraphs a. or b. above, then the applicable Limit of Liability shall be the Limit of Liability as set forth in Item 2 of the Declarations of this coverage section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

NOTICE OF CANCELLATION ENDORSEMENT

In consideration of the premium charged, it is agreed that if this coverage section is cancelled or non-renewed by the Company, the Company will endeavor to give thirty (30) days advance notice to the respective entity listed in the SCHEDULE below at its respective address, but failure to provide such notice shall not impair, delay or negate the effectiveness of such cancellation or non-renewal, nor shall it impose any obligation or liability of any kind on the Company, its agents or representatives.

SCHEDULE:

Entity:
Capital One Services, Inc.

Address:
C/O Insurance Tracking Services, Inc. (ITS)
P.O. Box 21919
Long Beach, CA 90801

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015        Federal Insurance Company

Endorsement/Rider No. 9

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

PRIVACY AND DATA BREACH EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.    Exclusion 12(b) of this coverage section is deleted.

2.    No coverage will be available under this coverage section for:

(i)    loss involving the disclosure of an **Insured's** or another entity or person's confidential or personal information while in the care, custody or control of an **Insured** including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information;

(ii)   loss involving the use of another entity or person's confidential or personal information while in the care, custody or control of an **Insured** including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information; or

(iii)  fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result, directly or indirectly, from the access to or disclosure of another entity or person's confidential or personal information, including but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information,

provided, however, that the above exclusions 2(i) and 2(ii) shall not apply to loss that is otherwise covered under any Insuring Clause other than Insuring Clause 10, Expense Coverage.

3.    The definition of **Property** in Section 11, Definitions, of this coverage section shall not include any **Insured's** or another entity or person's confidential or personal information

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015       Federal Insurance Company

      Endorsement/Rider No. 10

      To be attached to and
      form a part of Policy No. 8208-7853

Issued to: Maritz Holdings Inc.

---

SOCIAL ENGINEERING FRAUD COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to the coverage afforded by this endorsement, the following shall apply:

(1)     Item 2. and Item 3. of the Declarations of this coverage section are amended to include the following:

      Item 2.

      Insuring Clause:                Limit of Liability:

      Social Engineering Fraud Coverage:     $250,000

      Item 3.

      Retention: $100,000

(2)     The following Insuring Clause is added:

      Social Engineering Fraud Coverage Insuring Clause

      The Company shall pay the **Parent Organization** for loss resulting from an **Organization** having transferred, paid or delivered any **Money or Securities** as the direct result of **Social Engineering Fraud** committed by a person purporting to be a **Vendor, Client**, or an **Employee** who was authorized by the **Organization** to instruct other **Employees** to transfer **Money** or **Securities**.

(3)     Subsection 11, Definitions, is amended to include the following terms:

      **Vendor** means any entity or natural person that has provided goods or services to an **Organization** under a legitimate pre-existing arrangement or written agreement. However, **Vendor** does not include any financial institution, asset manager, broker-dealer, armored motor vehicle company, or any similar entity.

      **Social Engineering Fraud** means the intentional misleading of an **Employee**, through misrepresentation of a material fact which is relied upon by an **Employee**, believing it be genuine.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

(4)   Exclusion 12(k) is deleted.

(5)   Exclusion 12(n) is deleted and replaced with the following:

(n)   loss or damage due to **Theft, Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders And Counterfeit Currency Fraud, Credit Card Fraud, Social Engineering Fraud**, or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others, provided that this Exclusion 12(n) shall not apply to otherwise covered loss under Insuring Clauses (1), Employee Theft Coverage, or (9), Client Coverage, resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with such authorized representative.

(6)   Exclusion 15 is deleted and replaced with the following:

15.   No coverage will be available under Insuring Clause 2, 3, 5, 6 or Social Engineering Fraud Coverage Insuring Clausefor loss or damage as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**) surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property;

(7)   No coverage will be available under Social Engineering Fraud Coverage Insuring Clause for:

(a)   loss or damage due to **Theft** by an **Employee, Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Currency Fraud** or **Credit Card Fraud;**

(b)   loss of or damage to **Money** or **Securities** while in the mail or in the custody of any carrier for hire, including but not limited to any armored motor vehicle company;

(c)   loss due to any investment in **Securities**, or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine;

(d)   loss due to the failure, malfunction, inadequacy or illegitimacy of any product or service;

(e)   loss due to the failure of any party to perform in whole or in part under any contract;

(f)   loss due to the extension of any loan, credit or similar promise to pay;

(g)   loss due to any gambling, game of chance, lottery or similar game;

(h)   loss of or damage to any **Property;**

(i)   loss due to any party's use of or acceptance of any credit card, debit card or similar instrument, whether or not genuine.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015                   Company:   Federal Insurance Company

                                                  Endorsement No. 11

                                                  **To be attached to and**
                                                  form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

## TAX COMPENSATION COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that the Company shall adjust the amount of any loss paid in the United States to compensate for additional federal or state tax liability incurred by the **Insured** as a result   of the payment of such loss in the United States rather than in the country in which such loss was sustained, provided that:

A.   The loss was sustained by an entity not subject to United States or state tax provisions; and

B.   The payment for such loss is reportable income under the Internal Revenue Code and regulations or the tax laws of any state or commonwealth of the United States.

Loss payment shall be adjusted using the following formula:

**Final payment =**

**Loss Payment times**   <u>One minus the Marginal Foreign Tax Rate</u>
                         One minus the Sum of the Marginal United
                         States and State Tax Rates

### Definitions

**Final Payment** means the amount paid after the tax adjustment described in this endorsement.

**Loss payment** means the amount to be paid prior to the tax adjustment described in this endorsement.

**Marginal Foreign Tax Rate** means the marginal rate of income taxation of the insured entity which sustained the loss for the tax year in which such loss is written off.

**Marginal United States and State Tax Rates** means the marginal rates of Federal and State income taxation of the **Insured** which pays the loss in the United States for the tax year in which such loss is written off and shall include, if any, foreign tax credits accruing as a result of such loss.

### Conditions

1.   Nothing contained in this endorsement shall be construed to increase the Company's liability above the amount set forth in the Limits of Liability.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

2. Nothing contained in this endorsement shall be construed to decrease the Company's liability below the original amount of loss payment.

3. The **Insured** shall cooperate with any attempt by the Company to pay the loss directly to the entity sustaining the loss.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage  Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 12

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND DEFINITION OF ERISA PLAN ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **ERISA Plan**, as defined in Subsection 11 Definitions of
this coverage section, is amended to include the following plan(s):

>    Maritz Inc. Retirement Plan
>    Maritz Inc. Employee Investment Plan
>    Maritz Inc. Healthcare Plan
>    AEIS Retirement Investment Plan
>    Maritz Europa Ltd., Non-ERISA Pension Plan

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015          Company:   Federal Insurance Company

Endorsement No. 13

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND ITEM 4 ORGANIZATION ENDORSEMENT

In consideration of the premium charged, it is agreed that Item 4 of the Declarations for this coverage section is amended to include the following organization(s):

Maritz Family Development, LLC
Maritz Family Development II LLC

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-7400 (10/2002)          Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 14

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee,** as defined in Subsection 11 Definitions of this coverage section, is amended to include any former natural person employee of an **Organization** while in the regular service of such **Organization** as a consultant pursuant to a written contract between such person and such **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-7402 (10/2002)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 15

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

JOINT PAYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that any loss of **Money**, **Securities** or **Property** owned by MARITZ INC., which is covered under this coverage section, shall be payable by the Company to the **Parent Organization** and Solomon Smith Barney as joint payees.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-7408 (11/2002)          Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015                    Company:   Federal Insurance Company

                                                    Endorsement No. 16

                                                    To be attached to and
                                                    form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

JOINT PAYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that any loss of **Money, Securities** or **Property** owned by MARITZ INC., which is covered under this coverage section, shall be payable by the Company to the **Parent Organization** and JPMORGAN CHASE BANK as joint payees.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-7408 (11/2002)            Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 17

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

JOINT PAYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that any loss of **Money**, **Securities** or **Property** owned by MARITZ INC., which is covered under this coverage section, shall be payable by the Company to the **Parent Organization** and Citigroup Credit Services, Inc. as joint payees.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-7408 (11/2002)                     Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 18

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

## JOINT PAYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that any loss of **Money, Securities** or **Property** owned by MARITZ INC., which is covered under this coverage section, shall be payable by the Company to the **Parent Organization** and Citi Cards Canada, Inc. as joint payees.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

---
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 19

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

JOINT PAYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that any loss of **Money, Securities** or **Property** owned by MARITZ INC., which is covered under this coverage section, shall be payable by the Company to the **Parent Organization** and Bank of America, N.A. as joint payees.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 20

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND EXCLUSION 13(b)(iii) ENDORSEMENT

In consideration of the premium charged, it is agreed that clause (iii) of Exclusion 13(b) of this coverage section is amended to read in its entirety as follows:

(iii)     more than ninety (90) days following the termination of such **Employee**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-8530 (6/2003)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 21

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND ITEM 3 OF THE DECLARATIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that Item 3 of the Declarations for this coverage section is amended to read in its entirety as follows:

Item 3.  Retention:

| | | | |
|---|---|---|---|
| (A) | Insuring Clause 1 | Employee Theft Coverage | $100,000 |
| (B) | Insuring Clause 2 | Premises Coverage | $100,000 |
| (C) | Insuring Clause 3 | In Transit Coverage | $100,000 |
| (D) | Insuring Clause 4 | Forgery Coverage | $100,000 |
| (E) | Insuring Clause 5 | Computer Fraud Coverage | $100,000 |
| (F) | Insuring Clause 6 | Funds Transfer Fraud Coverage | $100,000 |
| (G) | Insuring Clause 7 | Money Orders and Counterfeit Fraud Coverage | Not Covered |
| (H) | Insuring Clause 8 | Credit Card Fraud Coverage | $10,000 |
| (I) | Insuring Clause 9 | Client Coverage | $100,000 |
| (J) | Insuring Clause 10 | Expense Coverage | N/A |

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

14-02-8574 (7/2003) rev.                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015          Company:  Federal Insurance Company

Endorsement No. 22

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

CONVERSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Subsection 19, Exclusions, of this coverage section is amended to read in its entirety as follows:

19.    No coverage will be available under this coverage section for:

(a)    loss unless sustained by an **Insured** and **Discovered** prior to the termination of this coverage section as to such **Insured**;

(b)    loss unless sustained and **Discovered** prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause; or

(c)    loss unless sustained and **Discovered** prior to the termination of this coverage section in its entirety;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause.

(2)    The first paragraph of Subsection 23, Changes in Exposure, of this coverage section is amended to read in its entirety as follows:

If before or during the **Policy Period** any **Organization**:

(a)    acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(b)    acquires another organization by merger into or consolidation with such **Organization** such that such **Organization** is the surviving entity,

14-02-8592 (07/2005) rev.          Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

then coverage shall be provided for such acquired organization or new **Subsidiary** for loss **Discovered** after the effective date of such acquisition or creation.

(3)     Subsection 24, Liability for Prior Losses, of this coverage section is deleted in its entirety.  Accordingly, any and all references to Subsection 24 are deleted in their entirety

(4)     The first paragraph of Subsection 25, Limits of Liability and Retention, of this coverage section is amended to read in its entirety as follows:

The Company shall only be liable for loss sustained by an **Insured** prior to termination of this coverage section and **Discovered** during the **Policy Period**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____

Authorized Representative

14-02-8592 (07/2005) rev.          Page 2

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 23

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

DELETE EXCLUSION 17 ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 17 of this coverage section is deleted.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 24

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The term **Employee**, as defined in Subsection 11, Definitions, of this coverage section, is amended to include any natural person independent contractor while in the regular service of an **Organization** in the ordinary course of such **Organization's** business whose services are under the exclusive direction of such **Organization** pursuant to a written contract (a "Contractual Independent Contractor").

(2)     Subsection 13 Exclusion (a) of this coverage section is amended to read in its entirety as follows:

    (a)     loss caused by any agent, broker, factor, commission, merchant, consignee, contractor, independent contractor (other than a Contractual Independent Contractor), subcontractor or other similar representative;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 25

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND DEFINITION OF DISCOVERY AND EXCLUSION 13(b) ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)   The term **Discovery** or **Discovered** as defined in Subsection 11 Definitions of this coverage section is amended to read in its entirety as follows:

**Discovery** or **Discovered** means the Chief Financial Officer, General Counsel, or Risk Manager of an **Organization** has become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this coverage section has occurred or acts have taken place that may subsequently result in a loss of a type covered by this coverage section.   This includes loss:

    (a)   sustained prior to the inception date of any coverage under this coverage section;

    (b)   which is within the applicable Retention as set forth in Item 3 of the Declarations for this coverage section; or

    (c)   for which the exact amount or details are unknown.

**Discovery** or **Discovered** shall not include knowledge acquired by the Chief Financial Officer, General Counsel, or Risk Manager of an **Organization** acting alone in a **Theft** or **Forgery, or** acting in collusion with any **Employee** in a **Theft** or **Forgery.**

(2)   Subparagraphs (i) and (ii) of Exclusion 13(b) of this coverage section are amended to read in their entirety as follows:

    (i)   after the Chief Financial Officer, General Counsel, or Risk Manager of an **Organization** becomes aware of a **Theft, Forgery** or other fraudulent, dishonest or criminal act committed by such **Employee** while employed with or in the service of an **Insured;**

    (ii)   after the Chief Financial Officer, General Counsel, or Risk Manager of an **Organization** becomes aware of a **Theft, Forgery** or other fraudulent, dishonest or criminal act, involving **Money, Securities** or other property valued at twenty-five

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

thousand dollars ($25,000) or more, committed by such **Employee** prior to employment or service with an **Insured**; or

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 26

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee**, as defined in Subsection 11 Definitions of this coverage section, is amended to include any **Employee** while on leave for military service.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-8891 (10/2003)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:  Federal Insurance Company

Endorsement No. 27

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

AMEND EXCLUSION 19 ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 19 of this coverage section is amended to read in its entirety as follows:

19.   No coverage will be available under this coverage section for:

(a)   loss unless sustained by an **Insured** prior to the termination of this coverage section as to such **Insured**, and **Discovered** and written notice thereof is given to the Company within ninety (90) days following such termination;

(b)   loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause, and **Discovered** and written notice thereof is given to the Company within ninety (90) days following such termination; or

(c)   loss unless sustained prior to the termination of this coverage section in its entirety, and **Discovered** and written notice thereof is given to the Company within ninety (90) days following such termination;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause issued by the Company or by any affiliate of the Company.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 28

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND VALUATION OF SECURITIES ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (a) of Subsection 28 Valuation and Foreign Currency of this coverage section is amended to read in its entirety as follows:

(a)     the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**, or the cost of replacing such **Securities**, whichever is less, plus the cost to post a Lost Instrument Bond;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 29

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Exclusion 12(j) of this coverage section is deleted.

(2)     No coverage will be available under Insuring Clause 2 or 3 for loss or damage due to fire;
         provided that this Exclusion shall not apply to:

        (i)     loss of **Money** or **Securities**; or

        (ii)    damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.


_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015                 Company:   Federal Insurance Company

                                                Endorsement No. 30

                                                To be attached to and
                                                form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Exclusion 12(a) of this coverage section is deleted.

(2)     No coverage will be available under Insuring Clause 1 or 9 of this coverage section for loss resulting directly or indirectly from any authorized or unauthorized trading of **Money, Securities** or **Property,** whether or not in the name of an **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion shall not apply to otherwise covered loss under Insuring Clause 1 or 9 which results in improper financial gain to an **Employee** (such loss shall mean only the amount of improper financial gain to such **Employee,** and shall not include **Salary,** commissions, fees or other compensation, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**).

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8927 (11/2003)                 Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015            Company:   Federal Insurance Company

                                           Endorsement No. 31

                                           To be attached to and
                                           form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND MONEY ORDERS AND COUNTERFEIT CURRENCY FRAUD ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Money Orders And Counterfeit Currency** Fraud, as defined in Subsection 11 Definitions of this coverage section, is amended to read in its entirety as follows:

> **Money Orders And Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:
>
> (a)    in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or
>
> (b)    in the regular course of business, of counterfeit paper currency.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8933 (11/2003)            Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015                    Company:  Federal Insurance Company

                                                   Endorsement No. 32

                                                   To be attached to and
                                                   form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

### LOSS REPORTING THRESHOLD ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 27 Proof of Loss and Legal Proceedings of this coverage section is amended to read in its entirety as follows:

It is a condition precedent to coverage hereunder that, upon **Discovery** of a loss in excess of twenty-five percent (25%) of the retention, the **Parent Organization** will:

(a)    give written notice to the Company at the earliest practicable moment, and in no event later than ninety (90) days after such **Discovery**;

(b)    furnish affirmative proof of loss with full particulars to the Company at the earliest practicable moment, and in no event later than six (6) months after such **Discovery**;

(c)    submit to examination under oath at the Company's request;

(d)    produce all pertinent records at such reasonable times and places as the Company shall designate; and

(e)    provide full cooperation with the Company in all matters pertaining to a loss or claim.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015          Company:   Federal Insurance Company

Endorsement No. 33

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

AMEND DEFINITION OF COMPUTER SYSTEM ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Computer System,** as defined in Subsection 11 Definitions of this coverage section, is amended to read in its entirety as follows:

**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are:

(a)      owned and operated by an **Organization**;

(b)      leased and operated by an **Organization**; or

(c)      utilized by an **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-9261 (4/2004)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: July 30, 2015          Company:   Federal Insurance Company

Endorsement No. 34

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND SUBSECTION 20 OWNERSHIP ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 20 Ownership is amended to read in its entirety as follows:

Solely for the purposes of Insuring Clause 9, the Company's liability under this coverage section will apply only to **Money, Securities** or **Property**:

(a)     owned by a **Client**, which is held by the **Organization** in any capacity or for which the **Organization** is legally liable; or

(b)     held by the **Client**, for which the **Client** is legally liable.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-9262 (4/2004)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 35

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

LOSS PAYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to this Crime Coverage Section and at the written request of the **Parent Corporation**, any payment in satisfaction of loss covered pursuant to this Coverage Section involving **Money, Securities,** or **Property** in which Capital One Services, Inc. has an interest, shall be paid by an instrument issued to Capital One Services, Inc. as sole loss payee, subject to the following conditions and limitations:

(i)   the coverage afforded pursuant to this policy is for the sole use and benefit of the **Parent Corporation** as expressed herein; Capital One Services, Inc. shall not be considered an **Insured** under this policy nor shall it otherwise have any rights or benefits hereunder;

(ii)  notwithstanding any payment made under the terms of this endorsement, the amount paid for any loss in accordance with the terms of this Coverage Section shall not exceed the applicable limits of liability as set forth In Item 2 of the Declarations for this Coverage Section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative



**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Executive Protection Portfolio*
SM
*Kidnap/Ransom and Extortion Coverage Section*

DECLARATIONS

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws of Indiana, herein called the Company

**READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization:**

Maritz Holdings Inc.
1375 North Highway Drive
Fenton, MO 63099

Item 2. Insuring Clauses:

Limits of Liability:

| | | | |
|---|---|---|---|
| (A) | Insuring Clause 1 – Kidnapping and Extortion Coverage: | | $10,000,000.00 |
| (B) | Insuring Clause 2 - Custody Coverage: | | $10,000,000.00 |
| (C) | Insuring Clause 3 - Expense Coverage: | | $10,000,000.00 |
| | (i) | Sublimit for **Recall Expenses:** | $100,000.00 |
| | (ii) | Sublimit for Rest and Rehabilitation Expenses: | $50,000.00 |

Note: The Sublimits shown in (C)(I) and (C)(ii) are part of, and not in addition to, the Limit of Liability in (C).

| | | | |
|---|---|---|---|
| (D) | Insuring Clause 4 - Accidental Loss Coverage: | | |
| | (i) | **Loss of Life Benefit Amount:** | $250,000.00 |
| | (ii) | **Event Benefit Amount:** | $1,000,000.00 |
| | (iii) | **Mutilation** (Percentage of **Loss of Life Benefit** | 25% |
| | (iv) | **Accidental Loss** other than **Mutilation** or **Loss of Life** (Percentage of **Loss of Life Benefit Amount**): | 50% |
| (E) | Insuring Clause 5 - Legal Liability Costs Coverage: | | $10,000,000.00 |

Item 3.   **Organization**

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey  07059

**Executive Protection Portfolio**
SM *Kidnap/Ransom and Extortion Coverage Section*

Maritz Holdings Inc. and its Subsidiaries

Item 4.   Retention:                                              None

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*[SM]
*Kidnap/Ransom and Extortion Coverage Section*

In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:

---

### Insuring Clauses

*Kidnapping and Extortion Coverage Insuring Clause 1*

1. The Company shall reimburse the **Parent Organization** for direct loss of property or other consideration surrendered as payment by or on behalf of an **Organization** resulting from **Kidnapping**, **Extortion Threat** or **Cyber Extortion**.

---

*Custody Coverage Insuring Clause 2*

2. The Company shall reimburse the **Parent Organization** for direct loss caused by the actual destruction, disappearance, confiscation or unlawful taking of property or other consideration, which is intended as payment for a covered **Kidnapping**, **Extortion Threat** or **Cyber Extortion**, while being held or conveyed by a person authorized by an **Organization**.

---

*Expense Coverage Insuring Clause 3*

3. The Company shall reimburse the **Parent Organization** for **Expenses** paid by an **Organization** resulting directly from a covered **Kidnapping**, **Extortion Threat** or **Cyber Extortion**, or resulting directly from a **Hijacking**, **Political Threat** or **Wrongful Detention**.

---

*Accidental Loss Coverage Insuring Clause 4*

4. The Company shall pay the Benefit Amount for **Accidental Loss** resulting directly from a covered **Kidnapping** or resulting directly from a **Hijacking** or **Wrongful Detention**.

---

*Legal Liability Costs Coverage Insuring Clause 5*

5. The Company shall reimburse the **Parent Organization** for **Legal Liability Costs**.

---

### Definitions

6. For the purposes of this coverage section:

   **Accidental Loss** means **Loss of Life**, **Loss of Use**, **Loss of Sight**, **Loss of Speech and/or Hearing** or **Mutilation** of an **Insured Person** when such **Accidental Loss**:

   (a) is sudden, unforeseen, unexpected and independent of any illness, disease or other bodily malfunction of such **Insured Person**; and

---

14-02-7308 (Ed. 11/2002)          Page 3 of 17

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



### Executive Protection Portfolio<sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage*
*Section*

(b)   happens by chance and arises from a source external to such **Insured Person**.

**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are owned and operated or leased and operated by an **Organization**.

**Consequential Personal Financial Loss** means pecuniary loss incurred by an **Insured Person**, including pecuniary loss resulting directly from the failure to renew insurance contracts, the failure to exercise stock options or the failure to respond to margin or loan calls by financial institutions.

**Contaminate** means to introduce a foreign material or substance, which would render any tangible property unfit for use or sale.

**Cyber-attack** means a set of unauthorized **Instructions** that are designed to alter, damage or destroy information within a **Computer System** without the authorization of an **Organization**, including those **Instructions** that are self-replicating or self-propagating and are designed to contaminate computer programs or computer data, consume computer resources or in some fashion usurp the normal operation of a **Computer System**.

**Cyber Extortion** means a threat or threats made directly against an **Organization** to:

(a)   alter, damage, destroy or render unusable any **Data** owned by such **Organization** or for which such **Organization** is legally liable; or

(b)   disseminate, divulge or utilize a **Record**,

by the fraudulent input of **Data** by means of a **Cyber-attack** into a **Computer System** by a person or group, whether acting alone or in collusion with others, where such person or group has fraudulently accessed or alleges to have fraudulently accessed such **Computer System** and is demanding payment or a series of payments, in exchange for the mitigation or removal of such threats.  However, such threat shall not constitute a **Cyber Extortion** unless, prior to surrendering property or other consideration as payment by or on behalf of an **Organization**, such **Organization** conducts a reasonable investigation and reasonably determines that such threat is technologically credible.

All such threats:

(i)   related by a common committed, attempted or threatened act; or

(ii)   made contemporaneously against the same **Organization** or involving the same **Data**, **Record** or **Cyber-attack**,

will be deemed to constitute a single **Cyber Extortion**.

**Data** means a representation of information, knowledge, facts, concepts or instructions which are processed and stored in a **Computer System**.

**Employee** means any:

(a)   natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** compensates by **Salary**

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage*
*Section*

and has the right to govern and direct in the performance of such service, including any part-time, seasonal, leased or temporary employee;

(b)  natural person volunteer while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** has the right to govern and direct in the performance of such service; or

(c)  **Executive** while performing acts within the scope of the usual duties of an **Employee.**

**Employee** shall not mean any agent, broker, factor, commission merchant, consignee, contractor, independent contractor, subcontractor or other similar representative.

**Event Benefit Amount** means that amount set forth in Item 2(D)(ii) of the Declarations for this coverage section.

**Executive** means any natural person specified below:

(a)  duly elected or appointed director, officer, member of the Board of Managers or management committee member of an **Organization** chartered in the United States of America;

(b)  in–house general counsel of an **Organization** chartered in the United States of America;

(c)  equivalent positions of (a) or (b) above in an **Organization** chartered in any other jurisdiction anywhere in the world; or

(d)  a partner of an **Organization** while engaged in the regular service of such **Organization.**

**Expenses** means:

(a)  solely in connection with a **Kidnapping, Extortion Threat, Political Threat, Hijacking** or **Wrongful Detention,** only the reasonable fees and expenses for or cost of:

    (i)  an independent negotiator or consultant;

    (ii)  an independent public relations consultant;

    (iii)  travel and accommodations of an **Insured Person;**

    (iv)  independent legal advice (other than **Legal Liability Costs);**

    (v)  independent security guard services for up to fifteen (15) days; provided that, with respect to such services incurred in connection with any **Political Threat,** the **Organization** shall bear uninsured and at its own risk twenty-five percent (25%) of such services, and the Company's liability shall apply only to the remaining seventy-five percent (75%) of such services;

    (vi)  advertising, communications and recording equipment;

    (vii)  an independent forensic analyst;

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**CHUBB**

*Executive Protection Portfolio*[SM]
*Kidnap/Ransom and Extortion Coverage Section*

---

(viii)  assessment of such **Extortion Threat** or **Political Threat** by an independent security consultant;

(ix)  interest for a loan taken by an **Organization** for property or other consideration surrendered as payment under Insuring Clause 1;

(x)  a reward paid by an **Organization** to a natural person who provides information not otherwise available leading to the arrest and conviction of the person(s) responsible for such **Kidnapping, Extortion Threat, Wrongful Detention** or **Hijacking**;

(xi)  the **Salary** which an **Organization** continues to pay an **Employee** following such **Kidnapping, Wrongful Detention** or **Hijacking** of such **Employee**. Such coverage shall apply to the **Salary** of such **Employee** in effect at the time of such **Kidnapping, Wrongful Detention** or **Hijacking** and will end thirty (30) days after such **Employee** is released or suffers **Loss of Life**, or sixty (60) months after such **Kidnapping, Wrongful Detention** or **Hijacking** began, whichever is more recent;

(xii)  the salary or wages which an **Organization** pays a newly hired natural person to conduct the duties of an **Employee** following such **Kidnapping, Wrongful Detention**, or **Hijacking** of such **Employee**.  Such coverage shall apply up to the **Salary** of such **Employee** in effect at the time of such **Kidnapping, Wrongful Detention**, or **Hijacking** and will end thirty (30) days after such **Employee** is released or suffers **Loss of Life**, or sixty (60) months after such **Kidnapping, Wrongful Detention** or **Hijacking** began, whichever is more recent;

(xiii)  **Consequential Personal Financial Loss** which an **Insured Person** suffers as the result of such **Insured Person's** inability to attend to personal financial matters;

(xiv)  reasonable medical, cosmetic, psychiatric and dental expenses incurred following an **Insured Person's** release;

(xv)  reasonable expenses of rest and rehabilitation, including meals and recreation, for up to thirty (30) days, when such expenses are incurred within twelve (12) months following an **Insured Person's** release;

(b)  solely in connection with an **Extortion Threat** to **Contaminate Merchandise, Recall Expenses**;

(c)  solely in connection with a **Cyber Extortion**, only the reasonable fees and expenses for or cost of:

(i)  an independent negotiator;

(ii)  assessment of such **Cyber Extortion** by an independent network security consultant;

(iii)  an independent public relations consultant;

(iv)  travel and accommodations of an **Insured Person**;

---

14-02-7308 (Ed. 11/2002)        Page 6 of 17

*Executive Protection Portfolio*[SM]
*Kidnap/Ransom and Extortion Coverage*
*Section*

(v)     independent legal advice (other than defense costs);

(vi)    interest for a loan taken by an **Organization** for property or other consideration surrendered as payment under Insuring Clause 1;

(vii)   a reward paid by an **Organization** to a natural person who provides information not otherwise available leading to the arrest and conviction of the person(s) responsible for such **Cyber Extortion**;

(d)    other reasonable expenses incurred by an **Organization**, subject to the Company's prior written approval.

**Extortion Threat** means a threat or threats made solely and directly against an **Organization** to:

(a)    commit a **Kidnapping** of, do bodily harm to, or wrongfully abduct or detain any **Insured Person**;

(b)    damage, destroy or **Contaminate** any **Property**;

(c)    disseminate, divulge or utilize any **Proprietary Information**; or

(d)    disseminate or make public negative information regarding **Merchandise** that has been the subject of a prior threat under (b) above,

by a person or group, whether acting alone or in collusion with others, demanding payment or a series of payments, in exchange for the mitigation or removal of such threats.

All such threats:

(i)     related by a common committed, attempted or threatened act; or

(ii)    made contemporaneously against the same **Organization** or involving the same **Insured Person**, **Property**, **Proprietary Information** or **Merchandise**,

will be deemed to constitute a single **Extortion Threat**.

**Hijacking** means the unlawful detention of an **Insured Person** (other than a **Kidnapping**) by violence or threat of violence by a person or group, where such unlawful detention:

(a)    occurs while traveling on or in an aircraft, watercraft or motor vehicle for a period in excess of four (4) hours; or

(b)    occurs while traveling on or in an aircraft or watercraft and results in such **Insured Person's Loss of Life**.

**Instructions** means an ordered set of **Data** representing coded information that, when executed by a **Computer System**, causes such **Computer System** to process **Data** or perform one or more operations.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means:

**CHUBB**

*- Executive Protection Portfolio*[SM]
*Kidnap/Ransom and Extortion Coverage
Section*

(a)   any **Employee**;

(b)   any **Relative** of an **Employee**;

(c)   any natural person who is employed in the household of an **Employee** while in the home of such **Employee**;

(d)   any natural person who is a legal resident in the home of an **Employee** or a guest while in the home of an **Employee**;

(e)   any customer or guest of an **Organization** while on the **Premises** of such **Organization**;

(f)   any customer or guest of an **Organization** while traveling on or in an aircraft, watercraft or motor vehicle with an **Employee**; or

(g)   any natural person who is temporarily retained by an **Organization** to deliver a ransom or extortion payment.

**Kidnapping** means an actual or alleged wrongful abduction and holding under duress or by fraudulent means of an **Insured Person** by a person or a group, whether acting alone or in collusion with others, demanding payment or a series of payments by an **Organization**, in exchange for the release of such **Insured Person**.

**Legal Liability Costs** means the reasonable defense costs incurred by an **Organization** and damages which an **Organization** becomes legally obligated to pay as a result of a judgment or settlement in any suit brought by an **Insured Person** (or the estate, heirs or legal representatives of such **Insured Person**) against such **Organization** alleging negligence or incompetence:

(a)   in the hostage retrieval operations or negotiations in a covered **Kidnapping** or **Extortion Threat** (as described in subparagraph (a) of the definition of **Extortion Threat**) or in a **Hijacking** or **Wrongful Detention** of such **Insured Person**; or

(b)   in the prevention of a covered **Kidnapping** or **Extortion Threat** (as described in subparagraph (a) of the definition of **Extortion Threat**) or in a **Hijacking** or **Wrongful Detention** of such **Insured Person**;

provided that such **Organization** agrees as a condition precedent to coverage under Insuring Clause 5 to cooperate with the Company in conducting the defense or in negotiating the settlement of such suit.

**Loss of Life** means:

(a)   death, including clinical death, determined by a medical examiner or similar local governing medical authority; or

(b)   the absence of communication from an **Insured Person** or those responsible for the **Kidnapping, Hijacking** or **Wrongful Detention** of such **Insured Person** for a period of two (2) years following the later of:

(i)   such **Kidnapping, Hijacking** or **Wrongful Detention**;

(ii)   the last communication from such **Insured Person**; or



**Executive Protection Portfolio** *SM*
*Kidnap/Ransom and Extortion Coverage Section*

(iii)   the last communication from those responsible for such **Kidnapping, Hijacking** or **Wrongful Detention**.

**Loss of Life Benefit Amount** means that amount set forth in Item 2(D)(i) of the Declarations for this coverage section.

**Loss of Sight** means the permanent loss of sight to the extent of legal blindness.

**Loss of Speech and/or Hearing** means the permanent total loss of the capability of speech and/or hearing.

**Loss of Use** means the permanent total loss of function of a foot, hand, or thumb and index finger.

**Merchandise** means an **Organization's** inventory, raw materials, work in progress or products manufactured or distributed by an **Organization**.

**Mutilation** means the permanent total loss of an entire finger, toe, ear, nose or genital organ.

**Organization** means any organization designated in Item 3 of the Declarations for this coverage section.

**Political Threat** means a politically motivated threat or threats made solely and directly against an **Organization** to do bodily harm to an **Employee** or a **Relative** of an **Employee** by a person or group:

(a)   acting as an agent of or with tacit approval of any government or governmental entity; or

(b)   acting or purporting to act on behalf of any political terrorist or insurgent party, organization or group.

All such threats:

(i)   related by a common committed, attempted or threatened act; or

(ii)   made contemporaneously against the same **Employee** or **Relative** of an **Employee**,

will be deemed to constitute a single **Political Threat**.
**Premises** means buildings or facilities occupied by an **Organization** in conducting its business.

**Property** means:

(a)   all **Premises** and **Merchandise** of an **Organization**;

(b)   any other real or tangible personal property owned or leased by an **Organization**; and

(c)   any other tangible personal property for which an **Organization** is legally liable, provided that such tangible personal property is located on the **Premises** or on any land adjacent thereto occupied by such **Organization** in conducting its business.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**Executive Protection Portfolio**<sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage
Section*

**Proprietary Information** means any confidential, private or secret information of an **Organization** and unique to such **Organization's** business, contained in or on drawings, negatives, microfilm, tapes, transparencies, manuscripts, prints, computer discs or other records of a similar nature, provided that such information is protected by physical or electronic control or other reasonable efforts to maintain nondisclosure of such information.

**Recall Expenses** means:

(a)     reasonable expenses for transportation; and

(b)     other reasonable expenses, subject to the Company's prior written approval,

incurred by an **Organization** in the withdrawal, physical inspection or destruction of **Merchandise**.

**Record** means information about a customer held by an **Organization** pertaining to that customer's relationship with such **Organization**, which is not publicly available and is stored in an electronic medium, provided that such information is protected by electronic control to maintain nondisclosure of such information.

**Relative** means spouses, siblings, ancestors, spouses' ancestors, lineal descendants or lineal descendants' spouses.  Lineal descendants include adopted children, foster children and stepchildren.  Ancestors include adoptive parents and stepparents.

**Salary** means compensation an **Organization** pays an **Employee**, including bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors, members of the Board of Managers, or management committee members of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Detention** means the wrongful involuntary confinement of an **Insured Person** (other than a **Kidnapping** or **Hijacking**) by a person or group, for a period of not less than twenty-four (24) hours.

## Exclusions

7.     No coverage will be available under this coverage section for:

(a)     loss of property or other consideration due to any fraudulent, dishonest or criminal act of an identifiable **Employee**, whether acting alone or in collusion with others; provided that this Exclusion 7(a) shall not apply to the extent that coverage under this coverage section is excess of the amount available to an **Organization**, whether collectible or not, under any other bond, insurance or indemnity which would cover such loss in whole or in part;

(b)     loss resulting from fraud by an **Insured Person**, whether acting alone or in collusion with others, allegedly the subject of a **Kidnapping**, **Extortion Threat**, **Wrongful Detention**, **Political Threat** or **Hijacking** if an **Organization** had not, prior to any

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage*
*Section*

payment, made reasonable efforts to determine that such **Kidnapping, Extortion Threat, Wrongful Detention, Political Threat** or **Hijacking** was genuine;

(c)   loss of property or other consideration surrendered or intended to be surrendered as payment by or on behalf of an **Insured Person** unless an **Organization** agrees that such payment is on behalf of such **Organization**;

(d)   loss of income not realized as the result of a covered loss;

(e)   **Recall Expenses** for or due to:

   (i)   refunds for, the value of or the cost of replacing any withdrawn, damaged or destroyed **Merchandise**; or

   (ii)   any loss, fees or expenses incurred for any known or suspected defect, deficiency or use of substandard or flawed materials necessitating the withdrawal, physical inspection or destruction of **Merchandise** in the absence of an **Extortion Threat** against such **Merchandise**;

(f)   loss arising from **Wrongful Detention** or **Political Threat** due to:

   (i)   any violation of law of the host country by an **Insured**; or

   (ii)   failure of an **Insured** to procure or maintain proper immigration, work, residence or similar visas, permits or other documentation;

(g)   loss sustained by one **Insured** to the advantage of any other **Insured**;

(h)   loss unless the **Kidnapping, Extortion Threat, Cyber Extortion, Political Threat, Wrongful Detention** or **Hijacking** occurs prior to:

   (i)   termination of this coverage section as to any applicable **Insured** and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination;

   (ii)   termination of any Insuring Clause or termination of any particular coverage offered under any Insuring Clause and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination; or

   (iii)   termination of this coverage section in its entirety and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination.

(i)   loss resulting from fraud by an **Insured Person,** whether acting alone or in collusion with others, allegedly the subject of an **Accidental Loss**;

8.   No coverage will be available under Insuring Clause 2, 3, 4 or 5 for loss of property or other consideration actually surrendered as a ransom or extortion payment covered under Insuring Clause 1.

9.   No coverage will be available under Insuring Clause 1 for:

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>

*Kidnap/Ransom and Extortion Coverage Section*

---

(a)    loss of property or other consideration surrendered away from the **Premises** in any face to face encounter involving the use or threat of force or violence unless surrendered by a person in possession of such property or other consideration at the time of such surrender for the sole purpose of conveying it to pay a previously communicated ransom or extortion demand and unless actually surrendered to those responsible for such demand or their designee; or

(b)    loss of property or other consideration surrendered on the **Premises** unless brought onto the **Premises** after receipt of the ransom or extortion demand for the sole purpose of paying such demand and unless actually surrendered to those responsible for such demand or their designee.

---

### Beneficiary

10.   The **Loss of Life Benefit Amount** will be paid to the **Insured Person's** designated beneficiary.  The Benefit Amount for all other **Accidental Loss** will be paid to the **Insured Person**, unless otherwise directed by the **Insured Person**.

If an **Insured Person** suffers **Loss of Life** and has not designated a beneficiary, or if the designated beneficiary is not alive, the Company will pay covered loss in the following order:

(a)    to the spouse;

(b)    in equal shares to the surviving children;

(c)    in equal shares to the surviving parents;

(d)    in equal shares to the surviving brothers and sisters; or

(e)    to the estate,

of such **Insured Person**.

---

### Changes in Exposure

11.   If before or during the **Policy Period** any **Organization**:

(a)    acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(b)    acquires another organization by merger into or consolidation with such **Organization** such that such **Organization** is the surviving entity,

then coverage shall be provided for such acquired organization or new **Subsidiary** after the effective date of such acquisition or creation.

If the total revenues of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total revenues of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent**

---

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage Section*

**Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such information as the Company in its sole discretion may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired organization or new **Subsidiary** shall be null and void from the date of such acquisition or creation. Coverage for such acquired organization or new **Subsidiary** shall be subject to such additional or different limitations, conditions, provisions or other terms as the Company in its sole discretion may require.

*Limits of Liability and Retention*

12.   The Company shall only be liable for a **Kidnapping, Extortion Threat, Cyber Extortion, Hijacking, Political Threat** or **Wrongful Detention** that first occurs during the **Policy Period.**

The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 in the Declarations for this coverage section, regardless of the number of **Insureds** sustaining such loss.

The Company's maximum liability shall not exceed the Limit of Liability:

(a)   Applicable to Insuring Clause 1 as set forth in Item 2(A) of the Declarations for this coverage section: for all loss of property and other consideration surrendered as ransom and extortion payments arising from one **Extortion Threat, Kidnapping** or **Cyber Extortion** and any related **Extortion Threat, Kidnapping** or **Cyber Extortion**, or a series of related **Extortion Threats, Kidnappings** or **Cyber Extortions;**

(b)   Applicable to Insuring Clause 2 as set forth in Item 2(B) of the Declarations for this coverage section: for all loss of property and other consideration intended as ransom and extortion payments arising from one **Extortion Threat, Kidnapping** or **Cyber Extortion** and any related **Extortion Threat, Kidnapping** or **Cyber Extortion**, or a series of related **Extortion Threats, Kidnappings** or **Cyber Extortions;**

(c)   Applicable to Insuring Clause 3 as set forth in Item 2(C) of the Declarations for this coverage section: for all **Expenses** arising from one **Extortion Threat, Kidnapping, Cyber Extortion, Hijacking, Political Threat** or **Wrongful Detention** and any related **Extortion Threat, Kidnapping, Cyber Extortion, Hijacking, Political Threat** or **Wrongful Detention**, or a series of related **Extortion Threats, Kidnappings, Cyber Extortions, Hijackings, Political Threats** or **Wrongful Detentions;**

(d)   Applicable to Insuring Clause 4:

(i)   If an **Insured Person** suffers a covered **Mutilation**, the Company's maximum liability for such **Mutilation** shall be the amount equal to the percentage, set forth in Item 2(D)(iii) of the Declarations for this coverage section, of the **Loss of Life Benefit Amount;**

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**CHUBB**

*Executive Protection Portfolio*<sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage*
*Section*

(ii)   If an **Insured Person** suffers a covered **Accidental Loss** (other than **Mutilation** or **Loss of Life**), the Company's maximum liability for such **Accidental Loss** shall be the amount equal to the percentage, set forth in Item 2(D)(iv) of the Declarations for this coverage section, of the **Loss of Life Benefit Amount**;

(iii)   If an **Insured Person** suffers a covered **Loss of Life**, the Company's maximum liability for such **Loss of Life** shall be the **Loss of Life Benefit Amount**;

(iv)   If an **Insured Person** suffers more than one covered **Accidental Loss**, the Company's maximum liability for all such **Accidental Loss** shall be calculated based on (i), (ii) and (iii) above; provided that in no event shall the Company's maximum liability for all such **Accidental Loss** exceed the **Loss of Life Benefit Amount**; or

(v)   If more than one **Insured Person** suffers covered **Accidental Loss** resulting from the same **Kidnapping**, **Wrongful Detention**, **Extortion Threat**, **Political Threat** or **Hijacking**, the Company's maximum liability for all such **Accidental Loss** shall be calculated based on (i), (ii), (iii) and (iv) above; provided that in no event shall the Company's maximum liability for all such **Accidental Loss** exceed the **Event Benefit Amount**, which shall be divided proportionately among such **Insured Persons**; or

(e)   Applicable to Insuring Clause 5 as set forth in Item 2(E) of the Declarations for this coverage section: for all **Legal Liability Costs** arising from one **Kidnapping**, **Hijacking**, **Wrongful Detention** or **Extortion Threat** (as described in subparagraph (a) of the definition of **Extortion Threat**) and any related **Kidnapping**, **Hijacking**, **Wrongful Detention**, or **Extortion Threat** (as described in subparagraph (a) of the definition of **Extortion Threat**), or a series of related **Kidnappings**, **Hijackings**, **Wrongful Detentions** or **Extortion Threats** (as described in subparagraph (a) of the definition of **Extortion Threat**).

The Company's maximum liability for all **Recall Expenses** shall be the Sublimit as set forth in Item 2(C)(i) of the Declarations for this coverage section.  Such amount shall be part of, and not in addition to, the Limit of Liability as set forth in Item 2(C) of the Declarations for this coverage section.

The Company's maximum liability for all rest and rehabilitation expenses (as described in subparagraph (a)(xv) of the definition of **Expenses**) shall be the Sublimit as set forth in Item 2(C)(ii) of the Declarations for this coverage section.  Such amount shall be part of, and not in addition to, the Limit of Liability as set forth in Item 2(C) of the Declarations for this coverage section.

The Company's liability under this coverage section shall apply only to that part of each loss which is in excess of the applicable Retention set forth in Item 4 of the Declarations for this coverage section.

*Non-Accumulation of Liability*

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



*Executive Protection Portfolio*<sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage
Section*

13. When there is more than one **Insured**, the maximum liability of the Company for loss sustained by any or all **Insureds** shall not exceed the amount for which the Company would be liable if all losses were sustained by any one **Insured**.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, whether under this coverage section, any prior bond or policy, or any renewal or replacement of this coverage section, the liability of the Company with respect to any loss shall not be cumulative from year to year or from policy period to policy period.

*Loss Sustained*

14. A loss shall be deemed to have been sustained under:

(a) Insuring Clause 1, at the time of the surrender of the ransom or extortion payment;

(b) Insuring Clause 2, at the time of the actual destruction, disappearance, confiscation or unlawful taking of the property or other consideration;

(c) Insuring Clause 3, at the time of the payment of incurred **Expenses** by the **Organization**;

(d) Insuring Clause 4, at the time of the **Accidental Loss**; or

(e) Insuring Clause 5, at the time the **Organization** has made payment for any incurred expense, judgment or settlement.

*Personal Assets*

15. In the event of a ransom or extortion demand directed against an **Insured Person** rather than against an **Organization**, property or other consideration surrendered or intended to be surrendered by or on behalf of such **Insured Person** and the following **Expenses**: subparagraphs (a)(i) through (a)(x) and (a)(xiii) through (a)(xv) of the definition of **Expenses**, incurred by or on behalf of such **Insured Person** shall, at the option of such **Organization**, be considered property or other consideration surrendered or intended to be surrendered on behalf of such **Organization** and **Expenses** incurred by such **Organization**.

*Proof of Loss and Legal Proceedings*

16. Knowledge possessed by, or discovery by, any **Executive** shall be deemed knowledge possessed by, or discovery by, all **Insureds**.

It is a condition precedent to coverage that at the earliest practicable moment after the occurrence of any loss hereunder the **Organization** shall give the Company written notice thereof and shall within four (4) months after such occurrence furnish to the Company affirmative proof of loss with full particulars.

No **Insured** shall institute legal proceedings against the Company for recovery of any loss under this coverage section after the expiration of a period of two (2) years, or any

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



**CHUBB**

*Executive Protection Portfolio*[SM]
*Kidnap/Ransom and Extortion Coverage
Section*

minimum period of time required by law, immediately following the time such loss was sustained.

### Valuation and Foreign Currency

17.   The Company shall pay:

(a)   the least of:

(i)   the actual market value of lost, damaged or destroyed securities at the closing price of such securities on the business day immediately preceding the day on which a loss is discovered;

(ii)   the cost of replacing securities; or

(iii)   the cost to post a Lost Instrument Bond;

(b)   the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

(c)   the least of:

(i)   the actual cash value of any other property or other consideration at the time of loss; or

(ii)   the actual cost to repair or replace such other property or consideration with that of similar quality and value; or

(d)   the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is discovered.

### Recoveries

18.   Recoveries for any loss covered under this coverage section, whether effected by the Company or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(a)   first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(b)   second, to the Company for the amount of such loss paid to an **Insured** as covered loss;

(c)   third, to an **Insured** for the Retention applicable to such loss;

(d)   fourth, to an **Insured** for the amount of such loss not covered under this coverage section.

Recovery from reinsurance or indemnity of the Company shall not be deemed a recovery hereunder.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**CHUBB**

*Executive Protection Portfolio*<sup>SM</sup>

*Kidnap/Ransom and Extortion Coverage Section*

---

### *Other Insurance*

19.   If any loss covered by this coverage section is insured under any other insurance policy(ies), prior or current, then this coverage section shall cover such loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such loss is in excess of the amount of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section.

The Company's liability under this coverage section for any loss of personal assets under Subsection 15 Personal Assets, other than a loss sustained by an **Employee**, shall be reduced by any amount paid or payable on account of such loss under other insurance issued by the Company or any of its subsidiaries or affiliated companies.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT

Coverage Section: Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement: July 30, 2015                Company: Federal Insurance Company

                                               Endorsement No. 1

                                               To be attached to and
                                               form a part of Policy No. 8208-7853

Issued to: Maritz Holdings Inc.

---

AMEND DEFINITION OF INSURED PERSON ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (f) of the definition of **Insured Person** as defined in Subsection 6 Definitions of this coverage section is amended to read in its entirety as follows:

(f)     any customer or guest of an **Organization** while traveling with an **Employee**; or

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement: July 30, 2015

Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

BUSINESS INCOME COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     This coverage section is amended to include the following Insuring Clause:

Business Income Coverage Insuring Clause 6

The Company shall pay the **Parent Organization** for actual **Business Income** loss sustained by an **Organization** resulting from the actual suspension of **Operations** during the **Period of Restoration.**

Such actual suspension of **Operations** must result solely and directly from:

(a)     a **Kidnapping, Hijacking, Political Threat** or **Wrongful Detention;**

(b)     an **Extortion Threat** described in subparagraph (a) or (b) of the definition of **Extortion Threat;** or

(c)     a **Cyber Extortion** described in subparagraph (a) of the definition of **Cyber Extortion,** provided that the reasonable investigation described in the definition of **Cyber Extortion** conducted to reasonably determine that the threat is technologically credible must be conducted by any security consultant.

(2)     Subsection 6 Definitions of this coverage section is amended to include the following terms:

**Business Income** means:

(a)     the sum of:

(1)     net profit before income taxes that would have been earned by the **Organization** had no actual suspension of **Operations** described in Insuring Clause 6 Business Income Coverage occurred;

(2)     the actual cost of continuing, on a curtailed basis, business activities of the **Organization** that are necessary for the **Organization** to resume **Operations** with substantially the same quality of service that existed immediately preceding the

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

actual suspension of **Operations** described in Insuring Clause 6 Business Income Coverage; and

(3)    reasonable expenses that would not have been incurred had no actual suspension of **Operations** described in Insuring Clause 6 Business Income Coverage occurred and that were incurred by the **Organization** for the sole purpose of reducing loss described in (a)(1) and (a)(2) above, not to exceed the amount of the actual reduction of such loss;

(b)    less the sum of:

(1)    all recoveries, insurance, suretyship and other indemnity which would cover loss described in (a) above in the absence of this coverage; and

(2)    the amount by which the **Organization** fails to reduce loss described in (a) above through any reasonable measures.

**Operations** means normal business activities of the **Organization** at the **Premises** directly affected by the event described in subparagraph (a), (b), or (c) of Insuring Clause 6 Business Income Coverage and existing prior to such event.

**Period of Restoration** means the period of time that:

(a)    begins six (6) hours following the actual suspension of **Operations** described in Insuring Clause 6 Business Income Coverage; and

(b)    ends on the earlier of:

(1)    the date such **Operations** are restored, with due diligence and dispatch, to the condition that existed prior to the event described in subparagraph (a), (b), or (c) of Insuring Clause 6 Business Income Coverage; or

(2)    one hundred twenty (120) days after the actual suspension of **Operations** described in Insuring Clause 6 Business Income Coverage.

Termination of this coverage section will not reduce the **Period of Restoration.**

(3)    Subsection 12 Limits of Liability and Retention of this coverage section is amended to include the following:

The Company shall only be liable for an actual suspension of **Operations** that first occurs during the **Policy Period.**

The Company's maximum liability shall not exceed $1,000,000.00 for all **Business Income** loss arising from one event described in subparagraph (a), (b), or (c) of Insuring Clause 6 Business Income Coverage, or any related event(s) described in subparagraph (a), (b), or (c) of Insuring Clause 6 Business Income Coverage, or a series of related events described in subparagraph (a), (b), or (c) of Insuring Clause 6 Business Income Coverage.

(4)    A loss shall be deemed to have been sustained under Insuring Clause 6 Business Income Coverage of this coverage section at the time income would have been earned and at the time of the payment of incurred costs and expenses by the **Organization.**

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement/rider: July 30, 2015          Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

AMEND DEFINITION OF HIJACKING ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Hijacking**, as defined in Subsection 6 Definitions of this coverage section is amended to read in its entirety as follows:

**Hijacking** means the unlawful detention of an **Insured Person** (other than a **Kidnapping**) by violence or threat of violence by a person or group, where such unlawful detention:

(a)     occurs while traveling on or in an aircraft, watercraft, railroad car or motor vehicle for a period in excess of four (4) hours; or

(b)     occurs while traveling on or in an aircraft, watercraft,  railroad car or motor vehicle and results in such **Insured Person's Loss of Life**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-11774 (02/2013)                     Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

## CONSULTANT FEES ENDORSEMENT

In consideration of the premium charged, it is agreed that the Expense Coverage provided pursuant to Insuring Clause 3 of this coverage section shall be subject to the applicable Limit of Liability as stated in Item 2.(C) of the Declarations; provided, however, in the event the **Parent Organization** shall select The Ackerman Group as any of the following (as such terms are used within the definition of **Expenses**):

        (i)      independent negotiator or consultant;
        (ii)     independent forensic analyst;
        (iii)    independent security consultant; or
        (iv)    independent network security consultant;

then the fees and expenses for and costs of any of the above, when provided by The Ackerman Group shall be deemed reasonable and unlimited and shall not be subject to the Limit of Liability applicable to Insuring Clause 3.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

---

Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

RETRAINING EXPENSES ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Expenses**, as defined in Subsection 6., Definitions, of this coverage section, is amended to include, solely in connection with a **Kidnapping, Wrongful Detention** or **Hijacking**, only the reasonable fees and expenses for or cost of retraining an **Employee** after his or her release from a covered **Kidnapping, Wrongful Detention** or **Hijacking**, including but not limited to, the **Salary** that such **Organization** continues to pay such **Employee** while being retrained and the reasonable fees and expenses for the cost of external training courses.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

---

Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement/rider: July 30, 2015          Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

AMEND DEFINITION OF WRONGFUL DETENTION ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Wrongful Detention**, as defined in Subsection 6 Definitions of this coverage section, is amended to read in its entirety as follows:

> **Wrongful Detention** means the wrongful involuntary confinement of an **Insured Person** (other than a **Kidnapping** or **Hijacking**) by a person or group.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-14224 (05/2008)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

CORPORATE CHILD ABDUCTION ENDORSEMENT
(WITH LEGAL LIABILITY COSTS COVERAGE)

In consideration of the premium charged, it is agreed that:

(1)     This coverage section is amended to include the following Insuring Clause:

Corporate Child Abduction Expense Coverage Insuring Clause 7

The Company shall reimburse the **Parent Organization** for **Corporate Child Abduction Expenses** paid by an **Organization** or a **Child's** parents resulting directly from a **Corporate Child Abduction**.

(2)     Subsection 6, Definitions, of this coverage section is amended to include the following terms:

**Child** means any natural person less than eighteen (18) years of age.

**Corporate Child Abduction** means the wrongful abduction of a **Child** from the **Premises** by a person other than a **Relative** of such **Child**.

**Corporate Child Abduction Expenses** means only the reasonable fees and expenses for or cost of:

(i)     services rendered by a representative of any security consultant;

(ii)     travel and accommodations of the **Child's** parents;

(iii)     an independent public relations consultant;

(iv)     publicity incurred by an **Organization** to locate the **Child**;

(v)     psychiatric services for the **Child's** parents during the **Corporate Child Abduction** and for a period of up to thirty (30) days following the **Child's** release or **Loss of Life**;

(vi)     a reward paid by an **Organization** to a natural person who provides information not otherwise available leading to the arrest and conviction of the person(s) responsible for such **Corporate Child Abduction**;

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

(vii)    reasonable expenses of rest and rehabilitation, including meals and recreation, for up to thirty (30) days, when such expenses are incurred within twelve (12) months following the **Child's** release; or

(viii)    other reasonable expenses incurred by an **Organization**, subject to the Company's prior written approval.

(3)    Solely with respect to a **Corporate Child Abduction**, the following shall apply:

    (A)    The definition of **Relative** as set forth in Subsection 6, Definitions, of this coverage section is deleted and replaced with the following:

        **Relative** means the custodial parent of a **Child**.

    (B)    The definition of **Legal Liability Costs** as set forth in Subsection 6, Definitions, of this coverage section is deleted and replaced with the following:

        **Legal Liability Costs** means the reasonable defense costs incurred by an **Organization** and damages which an **Organization** becomes legally obligated to pay as a result of a judgment or settlement in any suit brought against such **Organization** alleging negligence or incompetence in the prevention of a covered **Corporate Child Abduction**; provided that such **Organization** agrees as a condition precedent to coverage under Insuring Clause 5, to cooperate with the Company in conducting the defense or in negotiating the settlement of such suit.

(4)    Subsection 12, Limits of Liability and Retention, of this coverage section is amended to include the following:

        The Company shall only be liable for a **Corporate Child Abduction** that first occurs during the **Policy Period**.

        The Company's maximum liability shall not exceed $500,000.00 for all **Corporate Child Abduction Expenses** arising from one **Corporate Child Abduction** and any related **Corporate Child Abduction**, or a series of related **Corporate Child Abductions**.

(5)    A loss shall be deemed to have been sustained under Insuring Clause 7 Corporate Child Abduction Expense Coverage of this coverage section at the time of the payment of incurred **Corporate Child Abduction Expenses** by the **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section
(Fed/Vig)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

HOSTAGE CRISIS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)  For purposes of this endorsement, Section 6, Definitions, of this coverage section is amended as
follows:

(A)  The definition of **Kidnapping** is amended to include the following:

**Kidnapping**, solely with respect to Insuring Clause 3, Expense Coverage, also means
a **Hostage Crisis**.

(B)  The following Definition is added to this coverage section:

**Hostage Crisis** means an actual wrongful abduction and holding of **an Insured
Person** under duress by one party in a conflict with another party, where the holding
party demands from the other party a payment or other satisfaction of specified terms
in exchange for the release of such **Insured Person**, and the person from whom such
payment or other satisfaction of specified terms is demanded is within hearing or sight
distance of the **Insured Person** (whether by physical presence, telephone conference,
or video conference).

(C)  With respect to a **Hostage Crisis**, the Definition of **Expenses** in this coverage section is
amended as follows:

(a)  paragraph (a)(iii) is deleted and replaced with the following:

(iii)  travel and accommodations of **an Insured Person**, a **Hostage Crisis**
victim, and his **Relatives** to the country of which the **Hostage Crisis**
victim is a national, and the travel costs of a **Hostage Crisis** victim's
replacement and his **Relatives** to the country where the **Hostage
Crisis** occurred;

(b)  paragraph (a)(v) is deleted and replaced with the following:

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

    (v)    independent security services solely for protecting an **Insured Person**(s) and/or property located in the country where the **Hostage Crisis** event has occurred, on the specific direction of The Ackerman Group or any other security consultant, in accordance with the Company's prior written approval;

(c)    paragraph (a)(x) is deleted and replaced with the following:

    (x)    a reward paid by an **Organization** to a natural person who provides information not otherwise available leading to the resolution of such **Kidnapping, Extortion Threat, Wrongful Detention** or **Hijacking**;

(d)    paragraph (a)(xi) is deleted and replaced with the following:

    (xi)    the **Salary** which an **Organization** continues to pay an **Employee** following such **Kidnapping, Wrongful Detention** or **Hijacking** of such **Employee**.  Such coverage shall apply to the **Salary** of such **Employee** in effect at the time of such **Kidnapping, Wrongful Detention** or **Hijacking** and will end sixty (60) days after such **Employee** is released or suffers **Loss of Life**, or sixty (60) months after such **Kidnapping, Wrongful Detention** or **Hijacking** began, whichever is more recent;

(e)    paragraph (a)(xii) is deleted and replaced with the following:

    (xii)    the salary or wages which an **Organization** pays a newly hired natural person to conduct the duties of an **Employee** following such **Kidnapping, Wrongful Detention**, or **Hijacking** of such **Employee**. Such coverage shall apply up to the **Salary** of such **Employee** in effect at the time of such **Kidnapping, Wrongful Detention**, or **Hijacking** and will end sixty (60) days after such **Employee** is released or suffers **Loss of Life**, or sixty (60) months after such **Kidnapping, Wrongful Detention** or **Hijacking** began, whichever is more recent;

(f)    paragraph (a)(xv) is deleted and replaced with the following:

    (xv)    reasonable expenses of rest and rehabilitation, including meals and recreation, when such expenses are incurred within six (6) months following an **Insured Person's** release;

(g)    paragraph (d) is deleted and replaced with the following:

    (d)    other reasonable expenses incurred by an **Organization**;

(h)    the following paragraphs are added:

    (i)    the amount which an **Organization** pays a **Relative** equal to the salary or wages of such **Relative**, who assists in negotiations and rehabilitation of the victim during and following an incident of **Hostage Crisis**, not to exceed a period of sixty (60) days following the end of the **Hostage Crisis** incident;

    (ii)    costs incurred by the **Organization** for the **Salary** of any **Employee** specifically designated to assist in negotiating on the **Hostage Crisis** situation, not to exceed such employee's base rate of pay;

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

          (iii)    job retraining costs of the **Hostage Crisis** victim, including the salary of the **Hostage Crisis** victim while being retrained, and the costs of external training classes.

  (D)    With respect to a **Hostage Crisis**, the Definition of **Legal Liability Costs** in this coverage section is amended as follows:

      **Legal Liability Costs** means the reasonable defense costs incurred by an **Organization** and damages which an **Organization** becomes legally obligated to pay as a result of a judgment or settlement in any suit brought by an **Insured Person** (or the estate, heirs or legal representatives of such **Insured Person**) as a result of a **Hostage Crisis**, provided that such **Organization** agrees as a condition precedent to coverage under Insuring Clause 5 to cooperate with the Company in conducting the defense or in negotiating the settlement of such suit.

(2)    The Company's maximum liability for each loss arising out of a **Hostage Crisis** situation and all related **Hostage Crisis** situations shall not exceed $250,000.00.  Such amount shall be part of, and not in addition to, the Limits of Liability as set forth in Item 2(C) of the Declarations of this coverage section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT/RIDER

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement/rider: July 30, 2015          Federal Insurance Company

Endorsement/Rider No. 9

**To be attached to and**
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

DISAPPEARANCE INVESTIGATION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Section 6, Definitions, is amended as follows:

(A)     The preamble in Paragraph (a) of the definition of **Expenses** is deleted and replaced with the following:

(a)     solely in connection with a **Kidnapping**, **Extortion Threat**, **Political Threat**, **Hijacking**, **Wrongful Detention**, or **Disappearance**, only the reasonable fees and expenses for or cost of:

(B)     The following definition is added:

**Disappearance** means an unexplained vanishing by an **Insured Person** for a period of longer than thirty-six (36) hours, provided the vanishing has been reported to the local authorities, and a ransom demand has not been made in connection therewith.  The **Disappearance** of two or more **Insured Persons** last seen or reported together shall be treated as one **Disappearance**.

(2)     No coverage will be available under this coverage section for **Expenses** caused by a **Disappearance** if:

(A)     the **Disappearance** occurs within twenty-four hours of a natural disaster which is reported by local or global media;

(B)     the **Disappearance** occurs while an **Insured Person** is located in an area declared unsafe or uninhabitable by a local government; or

(C)     an **Insured Person** disappears at his or her own volition.  Any amounts paid to the **Insured** in connection with such voluntary **Disappearance** shall be refunded by the **Parent Organization** to the Company in the event the **Disappearance** is determined to be voluntary.

(3)     The Company's liability for each **Disappearance** event and all related **Disappearance** events shall be limited to $250,000.00.  Such amount shall be part of, and not in addition to, the Limit of Liability as set forth in Item 2(C) of the Declarations of this coverage section.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

14-02-15538 (12/2013)                    Page 2

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

ENDORSEMENT

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement: July 30, 2015

Company:  Federal Insurance Company

Endorsement No. 10

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

---

EMERGENCY POLITICAL REPATRIATION EXPENSE COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    This coverage section is amended to include the following Insuring Clause:

Emergency Political Repatriation Expense Coverage Insuring Clause 8

The Company shall reimburse the **Parent Organization** for **Emergency Political Repatriation Expenses** paid by an **Organization** resulting directly from an **Emergency Political Repatriation** or **Relocation**.

(2)    Subsection 6 Definitions of this coverage section is amended to include the following terms:

**Emergency Political Repatriation** means the return of an **Insured Person** to his or her **Resident Country** resulting directly from:

(a)    the issuance of a public announcement by a government agency of such **Resident Country** that the category of person, which includes such **Insured Person**, should leave the country in which such **Insured Person** is a temporary resident or a temporary business traveler as the result of a politically motivated threat or threats by a person or group:

(i)    acting as an agent of or with tacit approval of any government or governmental entity; or

(ii)    acting or purporting to act on behalf of any political terrorist or insurgent party, organization or group;

(b)    such **Insured Person** being expelled or declared persona non grata by written directive of the recognized government of the country in which such **Insured Person** is a temporary resident or a temporary business traveler; or

(c)    the complete seizure, confiscation or expropriation of the **Premises** located in the country in which such **Insured Person** is a temporary resident or a temporary business traveler by the recognized government of such country;

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

provided that such **Insured Person** was in the country in which he or she was a temporary resident or a temporary business traveler prior to the occurrence of any event described in subparagraphs (a), (b) or (c) above.

**Emergency Political Repatriation Expenses** means:

(a) solely in connection with an **Emergency Political Repatriation**, only the reasonable fees and expenses for or cost of:

    (i) travel of an **Insured Person** to the nearest place of safety or to his or her **Resident Country**;

    (ii) accommodations of an **Insured Person** for up to seven (7) days;

    (iii) the **Salary** which an **Organization** continues to pay an **Employee** following such **Emergency Political Repatriation** of such **Employee**. Such coverage shall apply to the **Salary** of such **Employee** in effect at the time of such **Emergency Political Repatriation** and will end upon the **Relocation** of such **Employee** or seven (7) days after such **Emergency Political Repatriation** began, whichever is more recent;

(b) solely in connection with a **Relocation**, only the reasonable fees and expenses for or cost of travel of an **Insured Person** to the country which he or she left as the result of an **Emergency Political Repatriation**.

**Relocation** means the return of an **Insured Person** to the country which he or she left as the result of an **Emergency Political Repatriation**.

**Resident Country** means the country of which an **Insured Person** is a national.

(3) No coverage will be available under Insuring Clause 8 Emergency Political Repatriation Expense Coverage of this coverage section for loss arising from or due to:

(a) any violation of law by an **Insured**;

(b) fraud by an **Insured Person**, whether acting alone or in collusion with others;

(c) failure to procure or maintain proper immigration, work, residence or similar visas, permits or other documentation;

(d) any bankruptcy, insolvency, debt or commercial failure or any repossession of any property;

(e) any breach of contract;

(f) any natural or man-made disaster, including but not limited to earthquake, flood, fire, famine, volcanic eruption or windstorm; or

(g) any nuclear fission, fusion or radioactivity.

(4) No coverage will be available under Insuring Clause 8 Emergency Political Repatriation Expense Coverage of this coverage section for loss unless the **Emergency Political Repatriation** or **Relocation** occurs prior to:

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

(i)     termination of this coverage section as to any applicable **Insured** and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination;

(ii)    termination of any Insuring Clause or termination of any particular coverage offered under any Insuring Clause and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination; or

(iii)   termination of this coverage section in its entirety and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination.

(5)     Subsection 12 Limits of Liability and Retention of this coverage section is amended to include the following:

The Company shall only be liable for an **Emergency Political Repatriation** or **Relocation** that first occurs during the **Policy Period**.

The Company's maximum liability shall not exceed $100,000.00 for all **Emergency Political Repatriation Expenses** arising from one **Emergency Political Repatriation** and any related **Emergency Political Repatriation** or **Relocation**, or a series of related **Emergency Political Repatriations** and **Relocations**.

(6)     A loss shall be deemed to have been sustained under Insuring Clause 8 Emergency Political Repatriation Expense Coverage of this coverage section at the time of the payment of incurred **Emergency Political Repatriation Expenses** by the **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 11

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

THREAT RESPONSE EXPENSE COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      This coverage section is amended to include the following Insuring Clause:

Threat Response Expense Coverage Insuring Clause 9

The Company shall reimburse the **Parent Organization** for **Threat Response Expenses** paid by an **Organization** resulting directly from a **Threat**.

(2)      Solely with respect to loss covered under Insuring Clause 9 Threat Response Expense Coverage, Item 4 of the Declarations for this coverage section is amended to read in its entirety as follows:

Item 4.  Retention: $0

(3)      Subsection 6 Definitions of this coverage section is amended to include the following terms:

**Threat** means a threat or threats made solely and directly against an **Organization** to:

(a)      commit a **Kidnapping** of, do bodily harm to, or wrongfully abduct or detain any **Insured Person**; or

(b)      damage, destroy or **Contaminate** any **Property**,

by a person or group, whether acting alone or in collusion with others.

All such threats:

(i)      related by a common committed, attempted or threatened act; or

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

(ii)    made contemporaneously against the same **Organization** or involving the same **Insured Person** or **Property**,

will be deemed to constitute a single **Threat**.

**Threat Response Expense**s means, solely in connection with a **Threat**, only the reasonable fees and expenses for or cost of:

(a)    assessment of such **Threat** by The Ackerman Group, Inc;

(b)    security guard services for the threatened **Insured Person** or **Property** provided by The Ackerman Group, Inc.

(4)    No coverage will be available under Insuring Clause 9 Threat Response Expense Coverage of this coverage section for loss:

    (a)    resulting from fraud by an **Insured Person**, whether acting alone or in collusion with others;

    (b)    unless the **Threat** occurs prior to:

        (i)    termination of this coverage section as to any applicable **Insured** and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination;

        (ii)    termination of any Insuring Clause or termination of any particular coverage offered under any Insuring Clause and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination; or

        (iii)    termination of this coverage section in its entirety and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination.

(5)    Subsection 12 Limits of Liability and Retention of this coverage section is amended to include the following:

The Company shall only be liable for a **Threat** that first occurs during the **Policy Period**.

The Company's maximum liability shall not exceed $250,000.00 for all **Threat Response Expense**s arising from one **Threat** and any related **Threat**, or a series of related **Threats**.

(6)    A loss shall be deemed to have been sustained under Insuring Clause 9 Threat Response Expense Coverage of this coverage section at the time of the payment of incurred **Threat Response Expense**s by the **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 12

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

### AMEND DEFINITION OF RELATIVE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The term **Relative**, as defined in Subsection 6 Definitions of this coverage section, is amended to include **Domestic Partners**.

(2)     Subsection 6 Definitions of this coverage section is amended to include the following term:

> **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement: July 30, 2015

Company:   Federal Insurance Company

Endorsement No. 13

To be attached to and
form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND ITEM 3 OF THE DECLARATIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that Item 3 of the Declarations for this coverage section is amended to include the following organization(s):

> Maritz Family Development, LLC
> Maritz Family Development II LLC

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

---
Authorized Representative

14-02-8531 (6/2003)                    Page 1

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement: July 30, 2015           Company:   Federal Insurance Company

                                          Endorsement No. 14

                                          To be attached to and
                                          form a part of Policy No. 8208-7853

Issued to:   Maritz Holdings Inc.

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee**, as defined in Subsection 6
Definitions of this coverage section, is amended to include any former natural person employee of an
**Organization** while in the regular service of such **Organization** as a consultant pursuant to a written contract
between such person and such **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.                    .

_____
Authorized Representative

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom and Extortion Coverage Section (Fed/Vig)

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 15

To be attached to and
form a part of Policy No. 8208-7853

Issued to:  Maritz Holdings Inc.

AMEND DEFINITION OF EXPENSES ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (a)(v) of the term **Expenses** as defined in Subsection 6 Definitions of this coverage section is amended to read in its entirety as follows:

(v)     independent security guard services for up to sixty (60) days;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

17SL-CC00823

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# EXHIBIT 2

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM





**EXCESS FOLLOW FORM CRIME POLICY
DECLARATIONS**

POLICY NO.  **105695750**

### Travelers Casualty and Surety Company of America

**Hartford, Connecticut**

(A Stock Insurance Company, herein called the Company)

| ITEM 1 | The Company (herein called Underwriter) issues this Policy to: |
|---|---|
| | **NAMED INSURED:** |
| | **Maritz Holdings Inc.** |
| | Principal Address: **1375 N. Highway Dr. FENTON, MO 63099** |
| | (herein called Insured). |

| ITEM 2 | **POLICY PERIOD:** |
|---|---|
| | The Policy Period shall be effective at 12:01 A.M on **July 30, 2015** and expire at 12:01 A.M on **July 30, 2016** local time as to each of said dates, subject to SECTION 5. of the Terms, Conditions and Limitations of this Policy |

| ITEM 3 | **LIMIT OF LIABILITY:** |
|---|---|
| | **$5,000,000** |

| ITEM 4 | **TOTAL AMOUNT OF UNDERLYING LIMIT OF LIABILITY:** |
|---|---|
| | **$5,000,000** |

| ITEM 5 | **SCHEDULE OF UNDERLYING INSURANCE:** |
|---|---|

| A | 1. UNDERLYING INSURER | **Federal Insurance Company** | |
|---|---|---|---|
| | 2. POLICY NUMBER | **8208-7853** | |
| | 3. POLICY PERIOD | FROM: 07/30/2015 | TO: 07/30/2016 |
| | 4. LIMIT OF LIABILITY | **$5,000,000** | |
| | | | |

| ITEM 6 | Subject to the Declarations, Insuring Clause, Terms, Conditions and Limitations and Endorsements, if any, of this Policy and as excepted below, this Policy follows the form of: |
|---|---|
| | Insurer's Name:   **Federal Insurance Company** |
| | Policy Number:   **8208-7853** |

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

|  | Effective Date       Policy Period:   From **07/30/2015**       To   **07/30/2016** |
|---|---|
|  | Except as provided below. **None** |
| **ITEM 7** | The Insured, by acceptance of this Policy, gives notice to the Underwriter terminating or canceling prior Policy(ies) No.(s) such termination or cancellation to be effective as of the time this Policy becomes effective. **Not Applicable** |
| **ITEM 8** | **ENDORSEMENTS EFFECTIVE AT INCEPTION:** **XSC100-0505; XSC10008-0911; XSC10010-0911; XSC206-0805** |
| **ITEM 9** | **ALL NOTICES OF CLAIM OR LOSS MUST BE SENT TO THE COMPANY BY EMAIL, FACSIMILE, OR MAIL AS SET FORTH BELOW:** **Email:BSIclaims@travelers.com FAX:(888) 460-6622 Mail:Travelers Bond & Specialty Insurance Claim         385 Washington St. – Mail Code 9275-NB03F         St Paul, MN  55102** |
| **ITEM 10** | **PREMIUM FOR THE POLICY PERIOD:** $14,700.00       Policy Premium |

Countersigned By

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its authorized officers.

Executive Vice President                    Corporate Secretary

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM





**EXCESS FOLLOW FORM CRIME POLICY**

## INSURING CLAUSE

In consideration of the payment of the premium, and in reliance upon the completeness and accuracy of the statements and disclosures made to the Underwriter and any issuer of Underlying Insurance by application, including all attachments, subject to the Declarations, Insuring Clause, Terms, Conditions and Limitations and Endorsements, if any, of this Policy, and except as provided either by endorsement or within Item 2. of the Declarations of this Policy, this Policy is subject to the same Insuring Clause(s), Terms, Conditions and Limitations and endorsements or riders, if any, as provided by the Policy(ies) identified in Item 6. of the Declarations. In no event shall this Policy provide broader coverage than would be provided by the most restrictive Underlying Insurance.

This Policy is not subject to the same premium or the Limit of Liability of the Policy(ies) identified in Item 6. of the Declarations.

## TERMS, CONDITIONS AND LIMITATIONS

### SECTION 1.    UNDERLYING COVERAGE

**A.** In no event shall the Underwriter be liable to pay loss under this Policy until the total amount of the Underlying Limit of Liability as stated in Item 4. of the Declarations has been exhausted solely by reason of the payment of loss by the Underlying Insurer(s) as covered loss under the applicable Underlying Insurance.

**B.** The Insured(s) shall notify the Underwriter in writing, as soon as practicable, of a failure to maintain in full force and effect, without alteration, the coverage and provisions of the Policy(ies) identified in Item 5. of the Declarations.

**C.** In the event there is no recovery available to the Insured as a result of the insolvency of any Underlying Insurer or the Insured's failure to comply with the maintenance of any Underlying Policy, the coverage hereunder shall apply as excess of the amount of all Underlying Policy(ies) plus the amount of any applicable deductible to the same extent as if the Underlying Policy(ies) were maintained in full force and effect.

**D.** If the coverage and provisions of the Policy identified in Item 6. of the Declarations are altered, the Insured shall, as soon as practicable, give the Underwriter written notice of such alteration. This Policy shall not follow the form of any alteration(s) to the Policy identified in Item 6. of the Declarations unless such written notice thereof is given by the first named Insured(s) to the Underwriter, the Underwriter gives written consent to such alteration(s) and the first named Insured(s) pay(s) any additional premium required by the Underwriter.

**E.** Any claim, loss or coverage that is subject to a Sublimit in any Underlying Insurance shall not be considered covered loss under this Policy, but shall, for the purposes of this Policy, reduce or exhaust the Underlying Limit of Liability to the extent such payment reduces or exhausts the aggregate limit(s) of liability of such Underlying Insurance.

### SECTION 2.    LIMIT OF LIABILITY

Payment of loss under this Policy shall not reduce the liability of the Underwriter under this Policy for other losses; provided, however, the maximum liability of the Underwriter under this Policy on account of:

**A.** any one act or series of related acts of burglary, robbery or attempt thereat, in which no employee of the Company is implicated,

**B.** any one act or series of related unintentional or negligent acts or omissions on the part of any person (whether an employee of the Company or not) resulting in damage to or destruction or misplacement of property,

**C.** all acts or omissions other than those specified in A and B preceding, caused by any person (whether an employee of the Company or not) or in which such person is implicated, or

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**D.**    any one casualty or event not specified in A, B or C preceding, is limited to the amount stated in Item 3. of the Declarations.  Also, if any loss covered under this Policy is, or would have been, subject to an aggregate limit of liability in any Policy(ies) identified in Item 6. of the Declarations, then the amount stated in Item 3. of the Declarations shall also be the maximum liability of the Underwriter on account of all such loss covered under this Policy.

## SECTION 3.    JOINT INSUREDS

If two or more Insureds are covered under this Policy, the first named Insured shall act for all Insureds. The liability of the Underwriter for loss(es) sustained by all Insureds shall not exceed the amount for which the Underwriter would have been liable had all such loss(es) been sustained by one Insured.

## SECTION 4.    NOTICE/PROOF OF LOSS – LEGAL PROCEEDINGS AGAINST UNDERWRITER

**A.**    The Insured(s) shall give the Underwriter written notice of any loss of the kind covered by this Policy that is required to be reported to the Insurer under the Policy set forth in Item 6. of the Declarations, whether or not the Underwriter is liable therefor in whole or in part.  Upon request of the Underwriter, the Insured(s) shall file with the Underwriter a written statement of such loss and a copy of all correspondence between the Insured(s) and any Insurer providing coverage for such loss. Notice given to the Insurer identified in Item 6. of the Declarations shall not constitute notice as required under Section 4. of the Terms, Conditions and Limitations of this Policy.

**B.**    The Insured(s) shall, within the time and manner prescribed in the Policy identified in Item 6. of the Declarations, file with the Underwriter a proof of loss for any loss of the kind covered by this Policy, whether or not the Underwriter is liable therefore in whole or in part, and upon request of the Underwriter, the Insured(s) shall furnish a copy of all documents provided to or made available to any Insurer providing coverage for such loss in support of any proof of loss filed with such Insurer.  Filing of a proof of loss with the Insurer identified in Item 6. of the Declarations shall not constitute filing a proof of loss with the Underwriter as required in Section 4. of the Terms, Conditions and Limitations of this Policy.

**C.**    Legal proceedings against the Underwriter of this Policy shall be commenced within the time prescribed in the Policy identified in Item 6. of the Declarations and only after complying with all the Terms, Conditions and Limitations of this Policy.

**D.**    Notice and proof of loss under this Policy shall be given as set forth in Item 9 of the Declarations.

## SECTION 5.    POLICY PERIOD

The term Policy Period as used in this Policy shall mean the lesser of the period stated in Item 2. of the Declarations or the time between the effective date and the termination date of this Policy.

## SECTION 6.    NON-CUMULATION OF LIMITS

The Limit of Liability set forth in Item 3. of the Declarations shall not be cumulated regardless of the number of Policy Periods this Policy has been in force; the number of renewals of this Policy by the Underwriter; any extensions of the Policy Period of this Policy by the Underwriter; the number of and amount of premiums paid by the Insured, and/or the number of Policy Periods of this Policy in which the acts giving rise to a loss(es) were committed or occurred.

## SECTION 7.    TERMINATION OF POLICY

This policy shall terminate upon the earliest of the following times:

**A.**    the effective date of termination specified in a prior written notice from the Insurer to the Insured in accordance with conditions and limitations of the applicable Followed Policy;

**B.**    the effective date of termination specified in a prior written notice from the Insured to the Insurer; or

**C.**    the expiration of the Policy Period stated in Item 2 of the Declarations.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**SECTION 8.    CANCELLATION OF THIS POLICY BY THE UNDERWRITER OR THE INSURED**

This Policy terminates as an entirety upon occurrence of any of the following: (a) after the receipt by the Insured of a written notice from the Underwriter of its desire to cancel  this Policy in accordance with the conditions and limitations of any Policy identified in Item 5. of the Declarations, (b) immediately upon the receipt by the Underwriter of a written notice from the Insured of its desire to cancel this Policy or (c) immediately upon cancellation, termination or nonrenewal of the Underlying Insurance identified in Item 6. of the Declarations, whether by the Insured or the applicable Underlying Insurer.


In witness whereof, the Underwriter has caused this Policy to be executed on the Declarations Page.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIFIED PROPERTY ENDORSEMENT

This endorsement changes the following:

**Excess Crime Follow Form Crime Policy**

**It is agreed that:**

This Policy provides no coverage for the Specified Property scheduled below.

**Specified Property**

**Money; Property**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105695750**

XSC-10008 Ed. 09-11
© 2011 The Travelers Indemnity Company. All rights reserved.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SECURITIES ENDORSEMENT

This endorsement changes the following:

**Excess Crime Follow Form Crime Policy**

**It is agreed that:**

Section 11. "Securities" of the Policy identified in Item 6. of the Declarations is replaced with the following:

Securities means Gift Certificates and Gift Cards distributed by the Insured.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105695750**

© 2011 The Travelers Indemnity Company. All rights reserved.

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MISSOURI AMENDATORY ENDORSEMENT

This endorsement modifies the following:

**Excess Follow Form Crime Policy**

**It is agreed that:**

**SECTION 7. CANCELLTION OF THIS POLICY BY THE UNDERWRITER OR THE INSURED,** subsection (a) is replaced with the following:

(a)     60 days after the receipt by the Insured of a written notice from the Underwriter of its desire to cancel this Policy in accordance with the conditions and limitations of any Policy identified in Item 5. of the Declarations,

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105695750**

17SL-CC00823

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# EXHIBIT 3

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

PREMIUM BILL

Insured:   Maritz Holdings Inc.                          Date:   11/04/2015

Producer:   ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES,
            INC.
            12444 POWERSCOURT DRIVE
            SAINT LOUIS, MO 63131-9998

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:  6803-1913

Policy Period:   July 30, 2015 to July 30, 2016

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 6803-1913

| Product | Effective Date | Premium |
|---|---|---|
| CCRMCBEX | 07/30/15 | $25,000.00 |
|  |  |  |
|  |  |  |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| TOTAL POLICY PREMIUM | $25,000.00 |
| TOTAL INSTALLMENT PREMIUM DUE | $25,000.00 |

Form 26-10-0426 (Ed. 2/98)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

PREMIUM BILL

Date:   11/04/2015

Insured:    Maritz Holdings Inc.

Producer:    ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES,
INC.
12444 POWERSCOURT DRIVE
SAINT LOUIS, MO 63131-9998

Company:    Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:  6803-1913

Policy Period:    July 30, 2015 to July 30, 2016

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

| Product | Effective Date | Commission Rate | Premium |
|---|---|---|---|
| CCRMCBEX | 07/30/15 | 0.00 % | $25,000.00 |
| | | | |
| | | | |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $25,000.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $25,000.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

Form 26-10-0426 (Ed. 2/98)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# POLICYHOLDER
## DISCLOSURE NOTICE OF
## TERRORISM INSURANCE COVERAGE
**(for policies with no terrorism exclusion or sublimit)**
**Insuring Company: Federal Insurance Company**

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 03/2015)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**Commercial Insurance Coverage**

# IMPORTANT NOTICE

Insuring Company: Federal Insurance Company

To obtain information or make a complaint:

You may call (company)'s toll-free telephone number for information or to make a complaint at:

**1-800-36-CHUBB**

You may write us at:

Chubb Group of Insurance Companies
Ten Petticoat Lane
3rd Floor
P.O. Box 13167
Kansas City, Missouri 64199-3167

Chubb Group of Insurance Companies
7733 Forsyth Boulevard
Suite 1300
St. Louis, Missouri 63105

**PREMIUM OR CLAIM DISPUTES**

Should you have a dispute concerning your premium or about a claim you should contact the (agent) (company) (agent or the company) first.

**ATTACH THIS NOTICE TO YOUR POLICY**

This notice is for information only and does not become a part or condition of the attached document.

Form 99-10-0338 (Ed. 5/93)



# EXCESS POLICY

DECLARATIONS

Policy Number 6803-1913

**Federal Insurance Company,**
a stock insurance company,
incorporated under the laws of
Indiana, herein called the
Company.

Item 1.  **Parent Organization:** Maritz Holdings Inc.

Item 2.  Principal Address:   1375 North Highway Drive
Fenton, MO 63099

Item 3  Limit of Liability:

Each **Policy Period**              10,000,000

Item 4.  **Underlying Insurance**:

(A)   **Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Federal Insurance Company | 8208-7853 | $5,000,000.00 | July 30, 2015 To July 30, 2016 |

(B)   Other Policies

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Travelers Casualty & Surety | 105695750 | $5,000,000.00 | |
| Company of America | | | July 30, 2015 To July 30, 2016 |

Item 5.  **Policy Period:**          From:   12:01 a.m. on July 30, 2015
To:       12:01 a.m. on July 30, 2016

Item 6.  Endorsements Effective at Inception: See Schedule of Forms Attached

Item 7.  Termination of Prior Policies: 6803-1913  (Jul 30, 2014 - Jul 30, 2015)

Item 8.  Pending or Prior Date:  July 30, 2005

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM



The Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

<table>
<tr><td>Maureen A. Brundage</td><td>Paul J. Krump</td></tr>
<tr><td>Secretary</td><td>President</td></tr>
</table>

11/04/2015
Date

Authorized Representative


**CHUBB**

## *Excess Policy*

In consideration of the payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this policy, the Company agrees as follows:

| | | |
|---|---|---|
| ***Insuring Clause*** | 1. | The Company shall provide the **Insureds** with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the insurers of the **Underlying Insurance** shall have paid in legal currency the full amount of the **Underlying Limit** for such **Policy Period**. Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** as amended by any more restrictive terms and conditions of any other policy designated in Item 4(B) of the Declarations, except as otherwise provided herein. |
| ***Maintenance of Underlying Insurance*** | 2. | All **Underlying Insurance** shall be maintained in full effect during the **Policy Period** and shall afford the same coverage provided by all **Underlying Insurance** in effect upon inception of this **Policy Period**, except for any depletion or exhaustion of the **Underlying Limit** solely by reason of payment of losses thereunder. |
| ***Depletion of Underlying Limit*** | 3. | Only in the event of exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Insurance,** or the **Insureds** in the event of financial impairment or insolvency of an insurer of the **Underlying Insurance,** paying in legal currency loss which, except for the amount thereof, would have been covered hereunder, this policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**. |
| | | The risk of uncollectability of any **Underlying Insurance**, whether because of financial impairment or insolvency of an underlying insurer or any other reason, is expressly retained by the **Insureds** and is not in any way insured or assumed by the Company. |
| ***Underlying Sublimits*** | 4. | If any **Underlying Limit** is subject to a **Sublimit**: |
| | a. | coverage hereunder shall not apply to any claim which is subject to such **Sublimit**, however, |
| | b. | the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such claim subject to such **Sublimit**. |
| ***Limit of Liability*** | 5. | The Company's maximum liability for loss shall be the amount set forth in Item 3 of the Declarations. |
| ***Claim Participation*** | 6. | The Company may, at its sole discretion, elect to participate in the investigation, settlement or defense of any claim covered by this policy even if the **Underlying Insurance** has not been exhausted. |

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM


**CHUBB**

# *Excess Policy*

| | | |
|---|---|---|
| ***Pending or Prior Matters*** | 7. | The Company shall not be liable under this policy for any loss which is based upon, arises from or is in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 8 of the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein. |
| ***Subrogation - Recoveries*** | 8. | In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **Insured**. |
| | | Any amounts recovered after payment of loss hereunder shall be apportioned in the inverse order of payment to the extent of actual payment. The expenses of all recovery proceedings shall be apportioned among the recipients of the recovery in the ratio of their respective recoveries. |
| ***Notice*** | 9. | The **Insureds** shall, as a conditions precedent to exercising their rights under this policy, give to the Company written notice as soon as practicable of the cancellation of any **Underlying Insurance**, any notice given under any **Underlying Insurance** and additional or return premiums charged or paid in connection with any **Underlying Insurance**. |

Notice to the Company under this policy shall be given in writing addressed to:

Notice of claim:  Home Office Claims Department
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

All other notices:  Executive Protection Practice
Chubb Group of Insurance Companies
15 Moutain View Road
Warren, New Jersey 07059

Such notice shall be effective on the date of receipt by the Company at such address.

| | | |
|---|---|---|
| ***Company Authorization Clause*** | 10. | By acceptance of this policy, the **Parent Organization** named in Item 1 of the Declarations agrees to act on behalf of all the **Insureds** with respect to the giving and receiving of notice of claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for under this policy (except the giving of notice to apply for any extended reporting period), and the **Insureds** agree that the **Parent Organization** shall act on their behalf. |
| ***Alteration*** | 11. | No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the Company. |

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM


**CHUBB**

## *Excess Policy*

| | | |
|---|---|---|
| ***Policy Termination*** | 12. | This policy shall terminate at the earliest of the following times: |

    (a)    sixty days after the receipt by the **Parent Organization** of a written notice of termination from the Company;

    (b)    upon the receipt by the Company of written notice of termination from the **Parent Organization**;

    (c)    upon expiration of the **Policy Period**;

    (d)    thirty days after the effective date of any alteration or termination of any **Underlying Insurance**, whether by the **Insureds** or any insurer of the **Underlying Insurer**, unless the Company (i) receives written notice of such alteration or termination from the **Parent Organization**, (ii) receives such information as the Company reasonably requests, and (iii) agrees, pursuant to an endorsement, not to terminate this policy; or

    (e)    at such other time as may be agreed upon by the Company and the **Parent Organization**.

Notice of cancellation or non-renewal of the **Primary Policy** duly given by the primary insurer shall serve as notice of the cancellation or non-renewal of this policy by the Company.

The Company shall refund the unearned premium computed at customary short rates if the policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata.

| | | |
|---|---|---|
| ***Termination of Prior Policies*** | 13. | Any policies specified in Item 7 of the Declarations shall terminate, if not already terminated, as of the inception date of this policy. |

| | | |
|---|---|---|
| ***Policy Definitions*** | 14. | When used in this policy: |

**Insureds** means those persons or organizations insured under the **Primary Policy**.

**Parent Organization** means the organization designated in Item 1 of the Declarations.

**Primary Policy** means the policy scheduled in Item 4(A) of the Declarations or any policy of the same insurer replacing or renewing such policy.

**Policy Period** means the period of time specified in Item 5 of the Declarations, subject to prior termination in accordance with Section 12 above. If any extended reporting period is exercised, such extension shall be treated as set forth in the **Primary Policy**.

**Sublimit** means any **Underlying Insurance** limit of liability which:

    a.    applies only to a particular grant of coverage under such **Underlying Insurance**, and

    b.    reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4 of the Declarations.

***Policy Definitions***
*(continued)*

**Underlying Insurance** means all policies scheduled in Item 4 of the Declarations and any policies of the same insurers replacing or renewing them.

**Underlying Limit** means the amount equal to the aggregate of all limits of liability as set forth in Item 4 of the Declarations for all **Underlying Insurance**, subject to any **Sublimits**, plus the applicable uninsured retention, if any, under the **Primary Policy**.

**CHUBB**

*Excess Policy*

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

*Crime Excess*

# Schedule of Forms

To be attached to and form part of
Policy No.   6803-1913

Company:    Federal Insurance Company

Issued to:   Maritz Holdings Inc.

14-02-9228 (2/10 ed.)

Electronically Filed - St Louis County - March 02, 2017 - 12:13 PM

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: July 30, 2015

Federal Insurance Company

Endorsement/Rider No. 1

**To** be attached to and
form a part of Policy No. 6803-1913

Issued to:  Maritz Holdings Inc.

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

## Harrell, Torrence

| | |
|---|---|
| **From:** | Beyer,Pamela J <PBEYER@travelers.com> |
| **Sent:** | Wednesday, March 08, 2017 7:49 AM |
| **To:** | TravelersSOP |
| **Cc:** | Service-of-Process-Coordinator; Beyer,Pamela J |
| **Subject:** | Travelers Direct March 7 hartford 3 |
| **Attachments:** | Petition.pdf; Exhibit+1.pdf; Exhibit+2.pdf; Exhibit+3.pdf; Summons.pdf |

| | |
|---|---|
| **Importance:** | High |

Maritz Holdings – combine docs

**Pamela Beyer | Sr Service of Process Coord | Corporate Litigation**
Travelers
385 S Washington Street |9275- LC12L
St. Paul, MN 55102
W: 651-310-3682   F: 651-310-8204



**From:** Abramo,Jennifer L
**Sent:** Tuesday, March 07, 2017 5:58 PM
**To:** Beyer,Pamela J <PBEYER@travelers.com>
**Cc:** Service-of-Process-Coordinator <Service-of-Process-Coordinator@travelers.com>
**Subject:** Maritz Holdings

Hi Pam

Please forward the attached as a courtesy copy to CSC – it should be routed to the bond department for handling.

Thanks.

**Jennifer Abramo | Paralegal | Corporate Litigation**
Travelers
One Tower Square | 8MS
Hartford, CT 06183
W: 860.277.2623  F: 800.856.0970

**From:** Kunau,Andrew R
**Sent:** Tuesday, March 07, 2017 4:59 PM
**To:** Brooks,Sharon T <STBROOKS@travelers.com>; Abramo,Jennifer L <JABRAMO@travelers.com>
**Cc:** Braley,Andrew K <ABRALEY@travelers.com>
**Subject:** FW: New Lawsuit Against Travelers

Not sure if this is already in the system, but attached is a new suit that was discovered by one of our panel attorneys in Missouri. It looks like Travelers Casualty and Surety Company of America is sued as the first layer of excess coverage.

**From:** Brady, Robert [mailto:rbrady@bjpc.com]
**Sent:** Tuesday, March 07, 2017 9:04 AM
**To:** Kunau,Andrew R <AKUNAU@travelers.com>

**Cc:** Green Jr,Jack W <<u>JGREENJR@travelers.com</u>>
**Subject:** New Lawsuit Against Travelers

Good morning Andrew,

Hope all is well.  I am attaching a new lawsuit filed against Travelers by a local company, Maritz, Inc.  I am sending to you because I know you handle first party suits arising out of computer fraud/hacking.  You may already be aware of this matter.  This suit was filed in St. Louis County Circuit Court on March 2, 2017.  The claimed loss arises out of computer fraud perpetrated upon Maritz, and it appears Travelers had an excess layer of coverage.  If Travelers does not already have counsel engaged, we would be glad to assist with the defense of this matter.  I am copying Jack Green of Claim Legal out of Overland Park so that he is aware of this new suit as well.  Thanks.

Bob



**Robert Brady** | Principal
800 Market Street, Suite 1100
St. Louis, MO 63101
314-242-5273
<u>rbrady@bjpc.com</u>

Website | Bio | LinkedIn

CONFIDENTIALITY NOTE: This message is from a law firm and contains information for the sole use of the intended recipient that may be privileged, attorney work product, or exempt from disclosure under applicable law. If you are not the intended recipient, any distribution, dissemination, or copying of this message, including any attachments, is strictly prohibited. If you received this message in error, or are not the proper recipient, please notify the sender at either the email address or telephone number above and delete this email (and any attachments) from your computer without copying or forwarding it. Thank you.

This communication, including attachments, is confidential, may be subject to legal privileges, and is intended for the sole use of the addressee. Any use, duplication, disclosure or dissemination of this communication, other than by the addressee, is prohibited. If you have received this communication in error, please notify the sender immediately and delete or destroy this communication and all copies.